GRAND VIEW BUILDING ASSOCIATION, APPELLEE, v. NORTHERN ASSURANCE COMPANY OF LONDON, APPELLANT.

FILED JANUARY 18, 1905.    No. 13,617.

1. Contract: REFORMATION: LIMITATION OF ACTIONS. The statute of limitations relative to actions on written contracts applies to a suit in equity to reform a policy of fire insurance so that it will express consent to concurrent insurance, and to recover on the instrument as so reformed.

2. Res Judicata. A suit in equity to reform a policy of fire insurance so that it will express consent to concurrent insurance, and to recover on the instrument as so reformed, may be maintained after the termination of an unsuccessful action at law to recover on the unreformed contract.

3. Evidence examined, and found to uphold the findings and judgment of the district court.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Greene, Breckenridge & Kinsler,* for appellant.

*Halleck F. Rose* and *Wilmer B. Comstock, contra.*

AMES, C.

The Grand View Building Association, a corporation, hereinafter called the association, obtained a policy of fire insurance upon chattel property belonging to it, from the Northern Assurance Company of London, England, hereinafter called the insurance company, or the company. The policy contained a clause declaring that it should be void if concurrent insurance should be obtained without the consent of the company in writing indorsed thereon.

Concurrent insurance was obtained without such written consent, and on June 1, 1898, the property was totally destroyed by fire. On the 30th of August following, an action was brought on the policy in the district court for Lancaster county. The petition in that action, for the purpose of avoiding the forfeiture, alleged in substance that the concurrent insurance was subsisting at the time the policy in suit was written, and was known to exist by the agent of the company who received and retained the premium, and wrote and delivered the policy, and who had authority to make the written indorsement mentioned, and that by such conduct he *waived,* for his principal, the making of the writing, and the latter was estopped to insist upon the forfeiture. The company by answer denied these allegations, and at its instance the action was removed to the circuit court of the United States for this district, where it was tried and the jury returned a verdict, finding specially the foregoing as well as other issues of fact in favor of the plaintiff. Thereupon the plaintiff recovered a judgment for the face of the policy, interest and costs. The judgment was affirmed upon proceedings in error in the circuit court of appeals for the 8th circuit, and the cause was removed thence, by *certiorari,* to the supreme court of the United States. It was decided by the last named court that the facts pleaded by the plaintiff and found by the jury were insufficient to relieve from the forfeiture for the reasons, first, because in the absence of fraud or mistake all contemporaneous or previous oral understanding or agreements are conclusively presumed to have been merged in the written contract, and, second, because the contract itself expressly denied to the agent any power to omit, change or waive any of its stipulations or conditions by parol, so that the knowledge or intent either of the agent or of the assured, or of both, could not operate as a waiver or as an estoppel, because, if the latter was misled thereby, it was due to his own folly. The very contract that he received notified him that he could safely rely upon nothing less or other than

an indorsement upon it. The judgments of both the lower courts were therefore reversed, and, in obedience to a mandate from the supreme court, the circuit court rendered a judgment for the defendant company upon the merits, and for costs. *Northern Assurance Co. v. Grand View Building Ass'n,* 183 U. S. 308.

On the 21st day of January, 1903, this action was begun in the district court for Lancaster county. The petition recites identically the circumstances set forth in the pleadings of the plaintiff in the former action, but supplements them by alleging that it was the intention of both the plaintiff and the defendant at the time the policy was written that it should, by its terms, permit the carrying of concurrent insurance, and that its failure so to do was unknown to the plaintiff at the time it was by it received and paid for, and until after the loss by fire, and was due either to the mistake or to the fraud of the agent of the defendant, and that the instrument as it was executed and now exists does not express the real and true contract of the parties thereto. The prayer of the petition is that the policy may be reformed so as to include the alleged omitted permission, and that when so reformed the plaintiff may recover thereon. Issues were joined, and, after a trial, findings were made and a judgment rendered according with the averments and prayer of the petition, and the defendant prosecutes this appeal.

No motive is shown for actual fraudulent intent on the part of the agent of the insurance company, and it is not attempted to be proved that he was guilty of any, or of any intentional deceit or concealment from which constructive fraud may be inferred. Mistake, to be actionable for the reformation of a contract in a court of equity, must be mutual and not due to the gross negligence of the complaining party. These propositions are elementary, and are so familiar to the profession that the citation of authority in their support is not deemed necessary. We have made a careful examination of the evidence, and the interpretation that we put upon it is the following: There

were but three participants in the transaction, Walsh, the president and agent of the association, Borgelt, an agent of the insurance company, and Richards, an agent of another insurance company, who acted to some extent as an intermediary between the other two. Richards testified that he was the first to tell Borgelt that Walsh desired the latter to write $2,500 insurance on the property in question, and that he at the same time told him that there was already $1,500 insurance upon it, with which it was desired that the new policy should be concurrent. Borgelt denied this latter statement and denied that he knew of the existing insurance. Walsh testified that he was present at an interview between the other two, in which the subject of concurrent insurance was mentioned and discussed, but he did not attempt to give the conversation, or the purport of it in detail. As to what occurred after the instrument had been written, and when it was delivered, he testified upon cross-examination as follows:

Q. In the taking of the policy (and) in payment of your premium, what or whom did you rely upon as to the form of the policy in which the risk was underwritten?

A. I relied—I never looked at the policy; I supposed it was like all my policies; I presumed the indorsement was on there, and I did not know for two or three weeks after the fire but that the policy was all right.

This is in substance the whole case. It is not pretended that there was any specific agreement that the now desired indorsement should be made upon the policy. The whole impression that this evidence makes upon our minds is this: That Walsh desired to obtain from the defendant insurance concurrent with that then existing. That Borgelt, the agent, knew of the existing insurance, and knew of the desire of Walsh, and intended to comply with it, but through inadvertence omitted so to do; that he knew of the condition for a forfeiture contained in the policy, and knew that it could be avoided only by an indorsement on the instrument. That the failure to make

the indorsement was due, not to fraud, but to the mistake or inadvertence of the agent, and that the acceptance of the contract by Walsh without the indorsement was due also to his mistake or inadvertence. The evidence falls short of showing that he knew that such an indorsement was necessary. He seems to have had a desire for concurrent insurance, and to have made it known to Borgelt, but what form of contract or policy was requisite for that purpose, he does not testify, nor is it otherwise shown that he knew. That matter he seems to have left to the skill and fidelity of the agent. That he was somewhat negligent in so doing, and in accepting and retaining the policy without reading it, is evident, but his negligence in that regard was not greater than that of the agent, with which it was concurrent, nor, we think, greater than that of ordinarily capable and prudent men in the transaction of such affairs. The case, we think, falls within the rule laid down in 2 Pomeroy, Equity Jurisprudence (2d ed.), sec. 845, and in the cases cited in his note. We quote the paragraph in full.

"The first instance which I shall mention is closely connected with the doctrine stated in the last paragraph but one. It was there shown that if an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement, in the process of reducing it to a written form the instrument, *by means of a mistake of law,* fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancelation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties

had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases; but the rule is not confined to these instances."

Within the rule thus established we think that the evidence supports the findings of fact of the trial judge, and that the mistakes of the agent and of Walsh were concurrent and mutual, and of a character against which equity will in ordinary cases relieve.

Is the judgment in the federal court *res adjudicata* and an estoppel to the prosecution of this suit? We think that so far as this jurisdiction is concerned, whatever may be the law elsewhere, this court has conclusively answered this question in the negative. When the plaintiff begun the former action, it supposed, as is shown by testimony of its counsel, preserved in the record, and, moreover, was bound to suppose, not only that an action at law on the contract, with pleading and proof of oral waiver of the stipulation for forfeiture, was a proper and adequate remedy for the recovery of its loss, but that, because it was so, a suit in equity to obtain a vain and unnecessary reformation of the contract would not lie. *Fireman's Fund Ins. Co. v. Norwood*, 16 C. C. A. 136; *Home Fire Ins. Co. v. Wood*, 50 Neb. 381.

The plaintiff begun its action and prosecuted it to final judgment in reliance upon, and in strict conformity with, these decisions, the former of which was justified, as the court pronouncing it thought, by the opinion of the supreme court of the United States in *Union Mutual Ins. Co. v. Wilkinson*, 13 Wall. (U. S.) 222. To say now that the plaintiff is estopped because it failed, in the first instance, to take its cause into a forum whose doors were to all appearances firmly and finally bolted and barred

against it, would not fall short of a mockery of justice. The language of this court in *State v. Bank of Commerce,* 61 Neb. 22, is strictly applicable to the present situation:

"One is not precluded from resorting to a remedy which the law gives him because he has attempted to avail himself of one to which he was not entitled."

More especially must this be true if the remedy to which he first makes unavailing resort is one which has been expressly and exclusively sanctioned by the very tribunals to which he makes application for it. The same doctrine was reannounced by this court in *Chicago, B. & Q. R. Co. v. Bigley,* 1 Neb. (Unof.) 225, approving and adopting the language of the supreme court of Indiana in *Bunch v. Grave,* 111 Ind. 351, 12 N. E. 514.

"A party who imagines he has two or more remedies, but who misconceives his rights, is not to be deprived of all remedy because he first tries a wrong one. * * * Justice * * * ought not be wholly denied because she mistook her remedy in the first instance."

Nor, it may well be added, because the first and only really prejudicial and misleading error, if it was an error, which we much doubt, was not made by the litigant, but by the ministers of justice themselves. To the same effect are *Pekin Plow Co. v. Wilson,* 66 Neb. 115; *Omaha v. Redick,* 61 Neb. 163; *Simons v. Fagan,* 62 Neb. 287; *Lansing v. Commercial Union Assurance Co.,* 4 Neb. (Unof.) 140.

The former suit was not inconsistent with this, but in that case the plaintiff sought to treat the contract as having been, in effect, reformed by the circumstances of its execution, which it was claimed waived or annulled one of its covenants. The supreme court held, and in practical effect it held nothing more, that the supposed reformation had not been accomplished. Thereupon the plaintiff resorted to this suit to secure its accomplishment, and for his right so to do he may quote no less authority than Mr. Chief Justice Marshall, who, in *Parker v. Judges,* 12 Wheat. (U. S.) 561, says that one who pro-

poses to "try a question entirely new, which has not been, and could not be, litigated at law," may do so "before the commencement of a suit at law, pending such suit, or after its decision by the highest law tribunal."

From the final decision in the former action, four out of the nine judges of the United States supreme court dissented. The opinion of the majority, being an adherence to the letter of an antiquated and worn out technical formality, seems to us to be an ironical commentary upon the often repeated judicial boast that the law is a progressive science, and that the courts are continually adapting their processes and proceedings to changing social and business needs and customs. Either so, or else, as we consider, the court fell into a still more grievous error. The familiar maxim that equity regards that as having been done which was agreed to be and ought in good conscience to have been done has not for a long time been a stranger in courts of law in cases in which equitable matters are properly in issue. It is admitted on all hands that the agent Borgelt had authority to bind his principal by executing the desired written stipulation for concurrent insurance. The greater includes the less. If he had power to enter into the covenant, he also had power to agree to enter into it. And if for value he made such an agreement, and through fraud or mistake failed to keep it, his failure is actionable both at law and in equity. It is upon such failure that this action is grounded. The parties did not *waive* written consent to concurrent insurance, or attempt so to do, but on the contrary agreed that it should be given. It is because of such agreement, and because such consent was mistakenly or accidentally omitted, that the plaintiff is entitled to have the contract reformed. Besides, the place where the contract was made, and where by its terms it was to be performed, and where the subject of it was situated, is in Nebraska. We are at a loss to understand why the laws of Nebraska, as expounded by the highest court of the state, are not conclusive of its obligatory force, and of its meaning and

effect, if not of the remedy appropriate to its enforcement. It is another familiar and often quoted maxim that the law enters into, and becomes an inseparable part of, every contract. We desire to be told what law, other than that of Nebraska, became thus incorporated into the contract in suit. The defendant contends that this action is barred by a limitation written in the policy and by the statute, and it is insisted that the decisions of this court in *Miller v. State Ins. Co.*, 54 Neb. 121, and *Omaha Fire Ins. Co. v. Drennan,* 56 Neb. 623, ought to be overruled. We are entirely satisfied with both the reasoning and conclusions in those cases. A man may not by contract deprive himself of the right to apply to the courts for the protection of his person, property or liberty in the manner or within the time prescribed by public law. Otherwise he might be permitted to sell himself into servitude.

Section 10 of the code enacts a limitation of five years for the commencement of actions accruing upon written contracts, and section 12 provides that an action for relief on the ground of fraud shall be brought within four years after the discovery of the cause therefor. It is not disputed that an attempt to take unfair advantage of a mutual mistake is constructive fraud that falls within the latter provision. This action was brought less than five years after the destruction of the insured property by fire, but more than four years after the discovery of the mistake in the terms of the policy. The question which provision of the statute of limitations applies is not free from difficulty, but we have come with some hesitation to the conclusion that it is the former of them. If the sole object of the action was to obtain relief from the consequences of fraud, or to recover money or property obtained by its means, doubtless the four-year limitation would govern; but actions like the present are, we think, founded upon the written contract, and the aid of equity is requisite, in those jurisdictions in which it is required at all, merely as auxiliary thereto, for the purpose largely of interpretation, so as to enable the court to read and

understand the contract as it was understood by the parties at the time they entered into it. Without the written policy there would have been no contract between the parties at all, however much they might have conferred with reference to the terms of one if made; but the instrument, when written and accepted, was obligatory upon both, and the plaintiff can recover only for a breach of it. The aid of equity is required merely to enable him to show that he is not, in good conscience, to be held, as he is charged with being, guilty of committing the first breach of it, and to establish that a certain stipulation which ought to have been, and which the parties intended should be, included in it, was mistakenly omitted. When equity has made the desired correction, according to the pleading and proof, it proceeds to enforce, not only the newly incorporated covenant, but the formal written contract as amended. Indeed, it could not do otherwise, because the omitted stipulation, standing alone, would be meaningless. This view, we think, is in harmony with previous decisions both in this court and elsewhere. *Gwyer v. Spaulding,* 33 Neb. 573; *Baldwin v. Burt,* 43 Neb. 245; *Hyde v. Hartford Fire Ins. Co.,* 70 Neb. 503; *Winchell v. Coney,* 27 Fed. 482; *Dodge v. Essex Ins. Co.,* 78 Mass. 65; Wood, Limitation of Actions (3d ed.), sec. 58, p. 137.

For the foregoing reasons, we are of the opinion that the judgment of the district court is right, and we recommend that it be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.