Lucy E. Williams, appellee, v. Western Travelers
Accident Association, appellant.

Filed December 4, 1914.    No. 17,865.

1. **Insurance:** Action: Limitations: Question for Jury.    A mutual
accident association could limit the time within which suit might
be brought against it "on any claim based upon its policies or
certificates of membership  *  *  *  to a period of (not) less than
one year from the time such right of action accrues," under section
17, ch. 53, laws 1903.    The defendant's by-laws provided that no
right of action should accrue "within ninety days after the receipt
of proof of loss at the office of the association."    Under the cir-
cumstances in this case, stated in the opinion, it became a question
of fact for the jury to determine as to when the proofs of loss
were received by the company.

2. ——: ——: ——: Review.    In such case, when no special
instruction or finding is requested as to when proof of loss should
be considered as received by the association, and the evidence
is substantially conflicting as to the receipt of such proofs at a
time within one year before the commencement of the action, a
general verdict for the plaintiff will not be set aside on the ground
that the cause of action accrued more than one year before the
commencement of the action.

3. **Compromise and Settlement:** Conclusiveness.    Ordinarily one who
receives and signs a written instrument is presumed to know and
agree to its contents, and mere negligence or carelessness on his
part will not relieve him of this responsibility.    But one who
knows that the party with whom he is dealing will probably be
careless in examining papers presented for signature, and pur-
posely attempts to induce such carelessness, and so obtains the
signing of the papers, which would not be signed if fully under-
stood, will not be allowed to urge the carelessness of such party
who signs the papers without knowing the contents thereof.

4. **Insurance:** Action: Cause of Death: Verdict.    The defendant's by-
law provided that, for "death resulting from cerebral hemorrhage
*  *  *  or heart failure caused by accidental injuries," the
amount payable shall be limited to $500.    *Held,* That the evi-
dence, indicated in the opinion, is sufficient to support a general
verdict, which includes the finding that death was not the result
of either of those causes.

5. ——: ——: Return of Money Paid.    It is also considered that,
under the circumstances in this case, the plaintiff could maintain

this action without returning the amount advanced by defendant before suit was brought.

6. **Appeal:** Conflicting Evidence. This case requires the application of the rule, so often announced, that the verdict of a jury upon substantially conflicting evidence will not be reversed as unsupported, unless, upon the whole record, it appears to be clearly wrong.

Appeal from the district court for Douglas county: George A. Day, Judge. *Affirmed.*

*Brome & Brome,* for appellant.

*Stewart, Williams & Brown, V. A. Crum* and *L. R. Slonecker, contra.*

Sedgwick, J.

The defendant is a mutual accident insurance company, organized under the laws of this state. It issued its policy of insurance upon the life of one Dan N. Williams. Afterwards, in January, 1910, Williams died in the city of Portland, Oregon. This action was brought by his widow, Lucy E. Williams, in the district court for Douglas county, upon the certificate of membership. The plaintiff recovered a verdict and judgment in the sum of $5,462.10. The defendant has appealed.

The defendant contends that the evidence is not sufficient to support the verdict; that the action was barred by the contract of limitation, not having been begun within one year from the time of making of proof of death; that the claim was settled and adjusted by the defendant before the commencement of the action; that the trial court erred in giving certain instructions to the jury, and also erred in refusing to give an instruction requested by the defendant.

1. The certificate of membership was issued in July, 1902. At that time agreements in contracts as to the time in which actions might be brought were contrary to public policy and void. This had been declared in several decisions of this court. *Miller v. State Ins. Co.,* 54 Neb. 121.

97 Neb. 23

In the following year the legislature enacted a statute regulating such companies, which provided: "Any corporation, association or society organized or operating under this act may limit the time within which suit may be brought against it on any claim based upon its policies or certificates of membership, and after the expiration of the time thus limited shall not be liable thereon; provided such limitation shall be incorporated in, and form a part of the contract between the company, association or society and the assured or its members; and provided further that such limitation shall not be limited to a period of less than one year from the time such right of action accrues." Laws 1903, ch. 53, sec. 17. The act also provided that corporations, associations or societies before that time incorporated and doing business in the state might avail themselves of the provisions of the act by filing a certificate with the auditor of state, with the following proviso: "Provided this act shall not relieve any corporation, association or society now doing business in this state from the fulfilment of any contract heretofore entered into with its members under its policies or certificates of membership, nor shall any member be relieved thereby from his or her part of the contract." Laws 1903, ch. 53, sec. 3. The defendant company availed itself of these provisions and afterwards, in 1907, amended its by-laws by adding the following provision: "And no legal proceedings for recovery under any certificate of membership shall be brought within ninety days after the receipt of proof of loss at the office of the association, nor at all, unless begun within one year from the time that right of action accrues, as above stated." It is contended that this amendment of the by-laws was unreasonable as to the insured and not binding upon his beneficiary, but, without deciding this question, we prefer to place our decision upon the construction of the by-law, as amended, and its application in this case.

This action was begun in July, 1911, about 18 months after the death of the insured. The by-law, as amended, provides that no action could be begun more than a year after the cause of action accrued. It also provides that

no action shall be begun "within ninety days after the receipt of proof of loss at the office of the association." The controversy upon this point is as to the time when the proof of loss was received at the office of.the association, within the meaning of this contract.

The defendant's by-laws provide that it shall be the duty of the executive board to "decide on all proofs of accident and of death by accident." It seems that the secretary was not empowered to decide those matters. The plaintiff claimed that the death of the insured was caused by an accidental fall while alighting from a street car, on the 25th day of December, 1909, and that he died on the 3d day of January, 1910. The company's by-laws required that written notice of the accident must be received at the office within 15 days from the date of the accident, and that proof of death should be filed in that office within 30 days from the date of death. On the 18th of January, 1910, the plaintiff sent the defendant a formal statement showing the death of the insured. This statement was upon a blank furnished by the company, and was entitled "Claimant's preliminary statement," and stated that it was "made for the purpose of giving information to the said association to obtain benefits therefrom under final proofs to be hereafter furnished by me." Several affidavits were also submitted with the statement with a letter referring to the papers as "Claimant's preliminary statement," and requesting the defendant to correspond concerning the matter with Lee Meyers, of Portland, Oregon, who was plaintiff's nephew. Upon receipt of this letter Mr. Butts, the defendant's secretary, wrote to Mr. Meyers, stating that he had received a letter requesting the company to address Mr. Meyers. In this letter the secretary made no reference to the papers which he had received, and made no objection to the delay in furnishing what was to be considered as final proof, but said: "In connection with this matter will say that the evidence at hand indicates that Mr. Williams' death was due to natural causes."

About a month later the plaintiff wrote Mr. Butts a letter in which she said: "I received through Mr. L. H.

Meyers your statement saying you found that my husband Dan N. Williams died from natural causes. I just want to tell you that I would like to have you try the fall he had and see how many could live he fell on the back of his head hard enough to be heard on the other side of the street was picked up and brought to the house by one delivery man Mr. Gehr and his son both saw him fall. He was hurt so badly he could not see to read the next day and complained constantly of his head. He never laid down fifteen minutes after he got here until after he died. The poor man would look at me and say I tell you Mamma that did hurt my head then he would jump up and pull his clothes off and fight us but did not have any fever any time during the nine days he lived. He had come here to rest and spend the holidays. * * * How many times I wanted him to drop it he would always tell me it might do us some good some time perhaps it has. * * * When we get to be as old as I am 53 years it is quite hard to start out to earn a living. Please don't think silly for I am so full of trouble I don't know what to do sometimes, but I have always put my trust in Him who knows all things and cares for the widows and orphans."

Mr. Butts answered this letter as follows: "This will acknowledge receipt of your letter of the 18th inst. It is with deep regret that we learn of your unfortunate circumstances as the result of the death of your husband, Mr. Dan N. Williams, whom we have always highly esteemed as a prominent member of this association. As an expression of our kind feeling on account of the circumstances so plainly stated in your letter, we are inclosing you herewith our check for $100, which will more than reimburse you for the amount paid into the association by Mr. Williams. This is not the practice of our association, but we feel that this amount will be acceptable and appreciated. It is customary where a membership is terminated to surrender the certificate, and if certificate No. 9823 is in your possession, please return to us by early mail when you acknowledge receipt of this letter. By this letter we waive none of our rights in the premises."

The plaintiff cashed this check. The consequences of her so doing will be considered in another connection.

Afterwards the plaintiff employed Mr. Crum, an attorney, who wrote to the defendant April 26, 1910, stating that he had the policy in question, and that "Mr. Williams accidentally fell on the 25th day of December, 1909, striking his head on the pavement. He died on or about the 3d day of January, 1910, as a result of his injury. On being notified of the accident you forwarded Mrs. Williams a check for $100, which leaves a balance due her of $4,900. Kindly let me hear from you." He received no answer, and afterwards wrote another letter, and still received no answer. He again wrote on the 15th of July, 1910, inclosing formal proof of the death of Mr. Williams as a result of the accident. August 9, 1910, Mr. Butts wrote a letter to Mr. Crum, in which he acknowledged the receipt of "various letters," and stated: "We made no response to these letters as final settlement had been made with Mrs. Williams direct, and her receipt dated February 23, 1910, is as follows:" He then set out a copy of the proviso which he had written in the check which he sent to Mrs. Williams, and said: "We therefore consider the matter closed."

Bearing in mind that the plaintiff under the defendant's by-laws could not maintain an action until 90 days after final proof had been received by the company, and that the company by furnishing her with formal blanks had induced her to suppose that her first proofs which she sent were preliminary only, and that the company had not up to this time acknowledged the receipt of the proofs contemplated in the contract, and that the proofs already submitted had not been considered by the executive committee, which alone was qualified to pass upon them, it must be conceded that the defendant's conduct would naturally, if not so intended, mislead the plaintiff in regard to the completeness of the proof. The company received and retained the formal proofs sent them July 15, 1910. No objection was made to the delay as a ground for contesting the claim. Indeed the delay may well have been caused

by the evasive and noncommittal attitude of the secretary. If the proofs of death were completed and received by the company as such after the 15th of July, 1910, the time limited by the by-laws had not expired when this action was begun. The question as to when the complete proof was received by the company, under the circumstances, was a question of fact for the jury, and it cannot be said that the finding in that regard was wholly unsupported by the evidence. No special instruction upon this point was given, but, as none was requested, the defendant cannot now complain on that ground.

2. The defendant strongly argues that the receipt of the check above recited, and receiving and keeping the money thereon, operates as a compromise and full settlement of the plaintiff's claim against the defendant. It is true that the language contained in the check, if agreed to by the parties, would amount to a compromise and settlement, as contended. The plaintiff testifies that, on account of the condition in which she was left by the death of her husband, she did not give such attention to the transaction as she would ordinarily have given to transactions of this nature; that she did not read the check, had never before received but one check in her life, and that she understood that the purpose of the check was solely to enable her to get the money from the bank, and not for the purpose of expressing the condition upon which the check was given. It is urged that the plaintiff was careless in not examining the check and not knowing its contents. Ordinarily such a suggestion would have great force. The letter which she wrote to the company, however, would indicate that she might not be as careful in examining financial transactions as business men are generally supposed to be, and the letter of the secretary in which he inclosed the check indicates that he realized that fact and supposed that she might not comprehend the force of the words which he had put in the check, and also indicates that he expected that she would not agree to such a compromise if fully understood by her, and designed to take advantage of that fact. He says that the check is sent her "as an expression

of our kind feeling on account of the circumstances so plainly stated in your letter. * * * This is not the practice of our association, but we feel that this amount will be acceptable and appreciated." We think that the company ought not now to accuse this plaintiff of negligence in not more carefully examining the check. It is urged that the request in this letter that the certificate of membership be returned to the company was an indication in the letter itself that the check was sent as a complete settlement, but the secretary upon the witness-stand testified that it was customary to demand a return of the certificate upon the death of a member, without regard to whether the claim was acknowledged or contested by the company. The court instructed the jury that, if she did not know that there were words in the check reciting that it was in full settlement of her claim, she was not bound by it, and, under the circumstances in this case, we think that the instruction was correct..

3. The by-laws of the company contained the provision that, for "death resulting from cerebral hemorrhage, cerebral paralysis, apoplexy or heart failure caused by accidental injuries," the amount payable shall be limited to $500. The defendant contends that the death of the insured was caused by cerebral hemorrhage, and therefore the court should have instructed the jury that in any case they could not find a verdict for more than $500. The evidence was that the deceased fell heavily, striking the back of his head on the frozen ground. Some of the witnesses testified that the covering of the brain was discolored; and it would appear from the evidence that the blood vessels were bruised and partly broken in the covering of the brain, and perhaps in some parts of the brain itself, so that some blood escaped among the tissues. The expert witnesses described it as ecchymosis, caused by the blow. Ecchymosis, according to Webster's New International dictionary, is: "A livid or black-and-blue spot, produced by the extravasation or effusion of blood into the areolar tissue. It is caused by a contusion and generally attended by swelling." So far as the evidence in the record shows, a

severe blow of this kind on the back of the head must have produced this condition in the immediate vicinity of the blow. It is an entirely different thing from a cerebral hemorrhage, which suffuses the brain and causes death. Of course, in one sense this accident caused heart failure. Death, no matter what the cause, is always accompanied by the failure of the heart, but it is not conclusively shown by this evidence that death was caused either by heart failure or the escape of blood into the brain.

The contention that the $100 received by the plaintiff should have been returned before the commencement of this action is without merit, under the circumstances in this case. It is not necessary that the evidence should be so conclusive upon the various questions of fact presented that the court must have found the issues as the jury did. When the evidence is substantially conflicting, such questions are for the jury, and their verdict will not be disturbed, unless, upon the whole record, it appears that it is clearly wrong.

The judgment of the district court is

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.