KENNETH WULF, APPELLEE, v. FARM BUREAU INSURANCE COMPANY OF NEBRASKA, APPELLANT.

205 N. W. 2d 640

Filed March 30, 1973. No. 38661.

Luebs, Tracy, Huebner, Dowding & Beltzer and D. Steven Leininger, for appellant.

Downing & Downing, for appellee.

Heard before WHITE, C. J., BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ., and RONIN, District Judge.

WHITE, C. J.

The plaintiff recovered a judgment in the sum of $3,761.59 for windstorm loss under a policy of insurance issued by the defendant, Farm Bureau Insurance Company of Nebraska. The defendant appeals, asserting that the action is barred by the statute of limitations and that the evidence is insufficient to support the jury's verdict on the issue of damages. The trial court determined these issues adversely to the defendant. We affirm the judgment of the District Court.

The first contention of the defendant is this action is barred by the statute of limitations, having been commenced more than 1 year after the occurrence of the loss. The policy and insurance contract were introduced in evidence and admitted by both parties. The first page of the policy or contract is a copy of the 1943 Standard Fire Insurance Policy of the State of New York. It contains (lines 157 to 161) a provision for a 1-year statute of limitations, which provision is not in conformity with section 44-357, R. R. S. 1943, which provides that no insurance company shall issue in this state any policy or contract of insurance containing any provision limiting the time within which an action may be brought to less than the regular period of time prescribed by the statutes of limitations of this state. The statutes of this state prescribe a 5-year limitation period for an action on an insurance contract.

The defendant's contention is a closely reasoned argument that section 44-501, R. R. S. 1943, mandatorily requires that the provisions of the 1943 Standard Fire

Insurance Policy of the State of New York are applicable and that the action is therefore barred. There are two answers to this contention. First, the section of the statute relied upon by the defendant, by its very terms, restricts its application to only fire and lightning insurance policies. The statute says in precise terms: "No policy or contract of *fire and lightning insurance*, including a renewal thereof, shall be made * * *." (Emphasis supplied.) The petition in this case alleges, and indeed there is no dispute in either the pleadings or the evidence, that the loss resulted from tornado and windstorm damage. The whole contract of insurance, including the first page under the provisions of the New York Standard Fire Insurance Policy of 1943, contains provisions and agreements and exclusions with reference to several types of coverage other than fire and lightning. It therefore becomes abundantly clear that the limitation period with reference to the other coverages besides fire and lightning contravenes the prohibition of section 44-357, R. R. S. 1943, and any such provision limiting the time within which an action may be brought to less than the regular period of time prescribed by the statute of limitations in this state is invalid.

But the defendant's argument must fall for another reason. It is clear, under the very terms and conditions of the whole policy of insurance, including the 1943 New York standard form, that the defendant has waived the application of the 1-year statute of limitations and has entered into an agreement conforming the limitation period to the Nebraska statute of limitations, pursuant to section 44-357, R. R. S. 1943. The pertinent and unambiguous provisions of the policy of insurance, admitted by the parties to be applicable in this case, provides as follows: "Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto." (Lines 38 to 40.) And at lines 49

to 52, we find the following: "No permission affecting this insurance shall exist, or waiver of any provision be valid, *unless granted herein or expressed in writing added hereto.*" (Emphasis supplied.) In pursuance of this waiver provision in the New York standard policy, the parties agreed under section 7, page 12, of the contract of insurance, as follows: "7. Conformity With Statute: The terms of this policy and forms attached hereto which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes." The policy of insurance was drawn by the insurer. The insured had a right to rely upon the clear and explicit terms and waivers provided in the policy of insurance as written. They clearly provide, independent of section 44-357, R. R. S. 1943, that the statutes of limitations in the State of Nebraska shall be applicable and that the policy is amended to conform to such statutes.

Our interpretation of the conforming clause in this contract harmonizes with and is reenforced by our holding in the quite recent case of Dunlop Tire & Rubber Corp. v. Ryan, 171 Neb. 820, 108 N. W. 2d 84 (1961), in which this court reaffirmed our previous holdings that it was against the public policy of the State of Nebraska to enter into an agreement changing the statutory limitation period for bringing an action. We said: "The attempt to so extend the right was void. In Miller v. State Ins. Co., 54 Neb. 121, 74 N. W. 416, 69 Am. S. R. 709, this court said: 'The statutes of this state provide in what time actions may be brought; and a contract which provides that no action shall be brought thereon, or for a breach thereof, unless within a time therein specified, which is different from the time which the statute fixes for bringing an action on such contract or for a breach thereof, *is against public policy and will not be enforced by the courts of this state.*' This pronouncement was approved in the following cases: Omaha Fire Ins. Co. v. Drennan, 56 Neb. 623, 77 N. W.

67; Grand View Building Assn. v. Northern Assurance Co., 73 Neb. 149, 102 N. W. 246, affirmed 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109; Williams v. Western Travelers Accident Assn., 97 Neb. 352, 149 N. W. 822; Avondale v. Sovereign Camp, W.O.W., supra; Young. v. Order of United Commercial Travelers, supra." (Emphasis supplied.)

Directly controlling of this issue with relation to a fire insurance policy is our recent holding in Hiram Scott College v. Insurance Co. of North America, 187 Neb. 290, 188 N. W. 2d 688. Therein we held as follows: "We therefore hold that a fire insurance policy legally issued in this state which contains a provision requiring suit to be brought within 12 months after the inception of the loss, but which also contains provisions amending any terms of the policy which are in conflict with state statutes to conform with such statutes, is subject to the limitations set out in section 44-357, R. R. S. 1943." In reaffirming the holding in the Hiram Scott College case, we point out that our decision in Rhodes v. Continental Ins. Co., 180 Neb. 10, 141 N. W. 2d 415, is not in conflict with our holding in the Hiram Scott College case and our holding herein. As was pointed out in the opinion in Hiram Scott College v. Insurance Co. of North America, supra, on the record presented to the court in that case there was no evidence of a conforming provision in the policy of insurance, or issue presented on appeal as to the applicability of the waiver provisions and the conforming clauses executed in pursuance thereof.

In the remaining contention of the defendant, it argues that the evidence is insufficient to sustain the plaintiff's burden of proof as to damages. There is no question under the evidence, and the defendant does not contend otherwise, that the insured dwelling of the plaintiff suffered damage as a result of a tornado and windstorm occurring on June 11, 1967. It argues that there is no evidence in the record of the amount of

damages suffered by the plaintiff as the result of the windstorm and that no evidence was introduced to prove the cost of the repairs the plaintiff actually made on the house. It also argues that the evidence as to damages was defective because no evidence was produced showing whether the house was in plumb before the storm. Briefly reviewing the evidence, it shows that the tornado of June 11, 1967, twisted the house, causing it to lean to the north and to the east, and otherwise out of plumb in many respects. The evidence is circumstantial, it is true. There is no evidence in the record to prove that on the exact date of the tornado and windstorm of June 11, 1967, the house, foundation, joists, door jambs, and other structures were exactly in plumb. Indeed if such proof were necessary for a recovery, it would probably bar recovery in all cases of this nature. Reviewing the circumstantial evidence, it shows that the storm caused trees to be twisted and uprooted, grain bins tossed around, the windmill of the plaintiff was twisted beyond recognition, and a barn just north of the house was totally demolished. It further shows that the west base of the house was flush with a concrete apron which had been poured to keep skunks out; and that after the tornado there was about a quarter of an inch separation between the base of the house and the concrete. After the storm the doors in the house would not open and close freely and it was necessary to take them down and plane them off so that they would swing freely. The evidence shows that the southwest corner of the roof of the house had been ripped up and partially torn off; that the windows were blown out; that tin on the roof was torn off; and that on the inside of the house dust had been forced out from the electrical outlets. Extensive amounts of plaster fell off the walls and it was necessary to drive nails in them to keep the plaster from further falling off. The defendant's expert, one Mr. Benjamin, testified that the forces at

work when a tornado passes into a building include wind velocities from 300 to 500 miles per hour; that explosive forces are caused by changes in air pressure; and a strong and lifting force due to the updraft of the air in the funnel.

The plaintiff's expert, a contractor with 19 years of experience, examined the house on three different occasions subsequent to the time of the loss. He observed that the house was out of plumb; that the plaster was cracked; and that the doors were dragging and sticking. He observed the separation between the poured concrete on the west side of the house and the house itself; and he found that the house leaned to the east and north. The defendant does not challenge the qualifications of this witness but asserts that his opinion was without proper foundation. The plaintiff's expert testified that it would cost $7,744 as a reasonable and necessary cost to put the house into plumb. The plaintiff testified that in his opinion the house was worth between $8,000 and $9,000 on June 10, 1967.

It is obvious, from the above recital of some of the testimony, that there was ample circumstantial evidence to show a severe loss and damage to the plaintiff's house. While it is true there is no evidence as to the precise variation, if any, of the plaintiff's house from plumb prior to the date of the storm, the evidence is almost conclusive that the force of the tornado threw it not only further out of plumb but that such condition required repairs to restore the house to its condition before the storm. The plaintiff's expert witness so testified. We come to the conclusion that there is ample evidence of the severe loss and damage to the plaintiff's house; that it was thrown out of plumb to an extent requiring extensive repairs to restore it to its former condition; and that there was sufficient foundation for the admission of opinion testimony of plaintiff's expert as to the amount of the damage in the sum of $7,744. The defendant's expert witness

testified himself that it was possible the house was moved out of plumb as a result of "an external force" but that he doubted it. The most that can be said is there was a conflict in testimony, and the jury resolved the conflict in favor of the plaintiff. There was ample evidence as to the amount of damages and to sustain the jury's verdict.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

SMITH and CLINTON, JJ., concur in the result.