179 F.3d 147,
HARBOR COURT ASSOCIATES; Murdock Development Company,
Plaintiffs-Appellants,
and
Council of Unit Owners of the Towers at Harbor Court
Condominium, Plaintiff,
v.
LEO A. DALY COMPANY, Third-Party Defendant-Appellee,
and
Kiewit Construction Company; Peter Kiewit Sons' and Company;
The Sherman R. Smoot Company, Incorporated; The Sherman R.
Smoot Corporation of Washington, DC; Owen Steel Company,
Incorporated, Defendants,
and
Republic Insurance Company; Travelers Casualty And Surety
Company; Fireman's Insurance Company of Newark, New Jersey;
Custom Steel Fabricators, Incorporated; Fidelity and Deposit
Company of Maryland; National Fire Insurance Company of
Hartford; American Motorist Insurance Company; Mission
National Insurance Company; Landmark Insurance Company;
Wausau Insurance Companies; National Union Fire Insurance
Company of Pittsburgh, Pennsylvania; Republic Insurance
Company; Employers Insurance of Wausau, a Mutual Company;
Aetna Casualty and Surety Company; Pacific Plaza Insurance
Services, Inc., Third-Party Defendants.
American Institute of Architects; National Society of
Professional Engineers; American Society of Civil
Engineers, Amici Curiae.
 No. 98-2158.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 8, 1999.
Decided June 3, 1999.
 
 ARGUED: John Henry Lewin, Jr., Venable, Baetjer & Howard, L.L.P., Baltimore, Maryland, for Appellants. James F. Lee, Jr., Carr, Goodson, Lee & Warner, P.C., Washington, D.C., for Appellee. ON BRIEF: Paul D. Barker, Jr., Mark D. Maneche, Venable, Baetjer & Howard, L.L.P., Baltimore, Maryland, for Appellants. William J. Carter, Carr, Goodson, Lee & Warner, P.C., Washington, D.C., for Appellee. Nory Miller, Elena N. Broder, Jenner & Block, Washington, D.C., for Amici Curiae.
 Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.
 Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge ERVIN and Judge HAMILTON joined.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Harbor Court Associates and Murdock Development Company appeal a district court award of summary judgment to defendant-appellee Leo Daly, an architect, on their diversity breach of contract and tort actions arising out of Daly's allegedly defective design of a commercial construction project. Finding no error, we affirm.
 
 I.
 
 2
 Harbor Court Associates and Murdock Development Company ("HCA/Murdock") are the developers of Harbor Court Complex, located in the Inner Harbor area of Baltimore, Maryland. On April 28, 1983, Murdock Development Company entered into a contract with Daly, whose principal place of business is in Nebraska. Under the contract, Daly would act as architect for the design and construction of Harbor Court Complex, which included a condominium tower, office building, hotel, health club, and parking garage.
 
 
 3
 The contract between Murdock Development Company and Daly is a standard agreement prepared by the American Institute of Architects, with some modifications. Relevant to this appeal are the following two provisions of that form agreement. Section 11.1 provides that
 
 
 4
 [t]his Agreement shall be governed by the law of the principal place of business of the Architect.
 
 
 5
 J.A. at 198. Section 11.3 states as follows:
 
 
 6
 As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the relevant Date of Substantial Completion, not later than the date of issuance of the Final Certificate of Payment.
 
 
 7
 Construction on the project began in mid-1984, and a Final Certificate of Completion was issued on September 11, 1987. Thereafter, the Complex operated for nearly eight years without any indication of design or construction problems, although its outer brick veneer did experience some minor chipping and cracking. In April, 1996, however, a fifteen-square-foot area of brick suddenly, and without warning, exploded off the face of the Complex. Structural engineers were called to investigate, and they informed HCA/Murdock that the brick veneer of the Complex suffered from fundamental and latent defects in design and construction.
 
 
 8
 On September 20, 1996 HCA/Murdock brought suit in the Circuit Court for Baltimore City against Kiewit Construction Company, the general contractor responsible for construction of the Complex, for breach of contract and negligence, and for a declaratory judgment that the defendant would be liable for damages or injuries caused to third parties as a result of the alleged defects in design and construction. Kiewit filed third-party claims against its subcontractors, and then removed the case to the United States District Court for the District of Maryland on diversity grounds. HCA/Murdock and the Council of Unit Owners of the Towers of Harbor Court Condominiums then filed a Consolidated Amended Complaint against Kiewit and the third-party defendants, each of which in turn filed third-party complaints against Daly for his role as architect. Finally, to round out the litigation, HCA/Murdock then filed a complaint against Daly for negligence and breach of contract, which the developers later amended to include a count for indemnification.
 
 
 9
 After limited discovery on statute of limitations issues, Daly moved for summary judgment against HCA/Murdock, arguing that section 11.3 of their written agreement established September 11, 1987, the date of Substantial Completion, as the date on which Maryland's three-year statute of limitations began to run, and that as a result the actions were long since time-barred. The district court agreed. The district court, in exercise of its diversity jurisdiction, held that a Maryland court would apply its own law to the contractual provision fixing the accrual date of any action, and would enforce the limitation provision. Although the Maryland courts apply the "discovery rule," which holds that a "cause of action accrues when the [plaintiff] in fact knew or reasonably should have known of the wrong," Pennwalt Corp. v. Nasios, 314 Md. 433, 442, 550 A.2d 1155 (1988), the district court rejected HCA/Murdock's argument that the Maryland Court of Appeals would decline to enforce as against public policy a contractual provision circumventing that rule by establishing a fixed date of accrual. The district court also held that even if, as HCA/Murdock argued, under the contract's choice-of-law provision interpretation of the accrual date clause was properly governed by Nebraska law, the clause was enforceable under the law of that state as well. The district court therefore granted Daly's motion for summary judgment, holding that because the cause of action accrued in September, 1987, HCA/Murdock's claims brought in 1996 were barred by Maryland's three-year statute of limitations.
 
 
 10
 In addition, the district court granted summary judgment to the defendant on HCA/Murdock's indemnification claim for any injuries arising after September 11, 1997, the date on which the Maryland Statute of Repose expired, and dismissed the claim without prejudice with regard to any as yet unidentified injuries or damages occurring before that date. The district court entered an order of final judgment on these claims pursuant to Fed.R.Civ.P. 54(b), and HCA/Murdock appeals.
 
 II.
 
 11
 Appellants argue that the district court, sitting in diversity, erred in granting summary judgment to appellee because a Maryland state court would have applied Nebraska, rather than Maryland, law to the accrual clause at issue, and under Nebraska law such a provision is unenforceable as against public policy. Appellants argue in the alternative that even if the district court did not err in choosing to apply Maryland substantive law to the disputed clause, it nonetheless erred in holding that the provision was enforceable under the law of that state. Because we believe that the contractual provision is enforceable under either Maryland or Nebraska law, thereby rendering resolution of the threshold choice-of-law question unnecessary to this appeal, we affirm.
 
 A.
 
 12
 We consider first appellants' contention that the contractual provision is unenforceable under Maryland law.
 
 
 13
 Appellants argue that because the Maryland courts have applied the "discovery rule" to all civil causes of action, see Poffenberger v. Risser, 290 Md. 631, 636, 431 A.2d 677 (1981), that rule has attained the status of a public policy around which parties may not contract. Historically, the general rule in Maryland, as in most jurisdictions, was that an action accrued on the date of the wrong. Pennwalt, 314 Md. at 438, 550 A.2d 1155. Under this "date of the wrong" rule, however, the operation of a statute of limitations would sometimes result in a potential plaintiff's forfeit of a cause of action that he neither knew nor should have known existed. The Maryland Court of Appeals has sought, through the development and widespread application of the discovery rule, to relieve the "blamelessly ignorant," Harig v. Johns-Manville Prods. Corp., 284 Md. 70, 83, 394 A.2d 299 (1978), of the "often harsh and unjust results which flow from [such] a rigid application of the statute of limitations." Pennwalt, 314 Md. at 452, 550 A.2d 1155.
 
 
 14
 We agree with appellants that the Maryland Court of Appeals, in so doing, may be said to have made a clear policy choice to establish the discovery rule as the default rule governing the date upon which its statutes of limitation begin to run. Appellants are also correct that section 11.3 of the parties' contract, if enforced, would circumvent that default rule. Because neither the courts nor the legislature of the state have explicitly prohibited parties to an agreement from departing from this default rule, however, the question remains whether the Maryland Court of Appeals would consider an attempt by sophisticated parties to contract around a rule developed for the protection of the blameless and unwary to be unenforceable as against the public policy of the state.
 
 
 15
 As both parties, as well as the district court, recognize, this question is one of first impression in Maryland. However, the Maryland courts have made perfectly clear their considerable reluctance to strike down voluntary bargains on public policy grounds. The Maryland Court of Appeals has stated that it would do so
 
 
 16
 only in those cases where the challenged agreement is patently offensive to the public good, that is, where the common sense of the entire community would ... pronounce it invalid. This reluctance on the part of the judiciary to nullify contractual arrangements on public policy grounds also serves to protect the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle.
 
 
 17
 Maryland-National Capital Park and Planning Comm'n v. Washington National Arena, 282 Md. 588, 606, 386 A.2d 1216 (1978) (alterations in original) (quotations and citations omitted).
 
 
 18
 In light of this established judicial commitment to protecting individuals' efforts to structure their own affairs through contract, we cannot conclude that the Maryland Court of Appeals would decline to allow parties to contract around the state's default rule establishing the date on which a relevant statute of limitations begins to run. This is especially true where, as here, the parties to the agreement are sophisticated business actors who sought, by contract, to allocate business risks in advance. That is, rather than rely on the "discovery rule," which prolongs the parties' uncertainty whether or if a cause of action will lie, the parties to this contract sought to limit that period of uncertainty by mutual agreement to a different accrual date.
 
 
 19
 While one might reasonably assume that such a limitation in fact provides at least some marginal benefit to both parties in terms of increased predictability, we need not do so in order to conclude that the agreement is enforceable. For even if such a contractual limitation redounds only to Daly's benefit--in the form of an increase in repose and a decrease in liability--HCA/Murdock was free in return to reduce the compensation it was willing to offer for Daly's architectural services, or indeed to hire another architect for the project. Appellants have not alleged that this contract was induced by fraud or duress, or that the bargaining power of the parties was anything but equal. Rather, by all appearances, HCA/Murdock are sophisticated business actors that determined, in the unfettered exercise of their business judgment, that the bargain they received from appellee was adequate consideration for the surrender of the discovery rule's potential advantages. Now, having received the benefit of their bargain, appellants wish to obtain by appeal to "public policy" considerations the benefit of Daly's as well. We are confident that the Maryland high court would not allow them to do so.
 
 
 20
 Although this case is, as we have noted, one of first impression in Maryland, we are confirmed in our conclusion by the fact that the only courts to consider a contractual accrual date provision have all enforced it. See Old Mason's Home of Kentucky, Inc. v. Mitchell, 892 S.W.2d 304 (Ky.Ct.App.1995); Oriskany Cent. School Dist. v. Edmund J. Booth Architects, 206 A.D.2d 896, 615 N.Y.S.2d 160 (N.Y.App.Div.1994), aff'd, 85 N.Y.2d 995, 630 N.Y.S.2d 960, 654 N.E.2d 1208 (N.Y.1995); Keiting v. Skauge, 198 Wis.2d 887, 543 N.W.2d 565 (Wis.App.1995). We agree with the district court that the courts of Maryland, with their established commitment to the enforcement of individual contractual choices, would not find a provision that at least three state courts have enforced to be "patently offensive," or conclude that the common sense of the whole community would pronounce it invalid. We therefore also agree that the Maryland courts would enforce the contractual provision fixing the accrual date of any civil action to the date work on the project was substantially completed.
 
 B.
 
 21
 Appellants argue that the district court applied the wrong state's law in determining the enforceability of the accrual date provision. It is certainly not unreasonable for appellants to so argue, as they are right to conclude that enforceability of this provision under Nebraska law is a substantially closer question than it is under Maryland law. Nevertheless, we believe that the district court was correct in concluding, however briefly, that the contractual provision is enforceable even under Nebraska law.
 
 
 22
 For more than one hundred years, the courts of Nebraska have refused to enforce as against public policy any contractual provision purporting to alter the limitations period provided by statute. In Miller v. State Ins. Co. of Des Moines, 54 Neb. 121, 74 N.W. 416, 417 (Neb.1898), the Nebraska Supreme Court declined to enforce a provision of an insurance contract requiring an action on the policy to be brought within six months from the date of any loss or damage, "notwithstanding any statute of limitations to the contrary." Id. The court declined to be bound by the contractual provision, stating instead that
 
 
 23
 [t]he statutes of the state provide in what time all actions may be brought; and a contract which provides that no action shall be brought thereon, or for a breach thereof, unless within a time therein specified, which is different from the time which the statute fixes for bringing an action on such contract or for a breach thereof, is against public policy, and will not be enforced by the courts of this state.
 
 
 24
 Id. The Miller rule has been reaffirmed a number of times since its inception, most notably in the case of Dunlop Tire & Rubber Corp., 171 Neb. 820, 108 N.W.2d 84 (Neb.1961), in which the Nebraska Supreme Court refused to allow an action to proceed pursuant to New York's six-year statute of limitations instead of its own five-year period, even though the guaranty provision at issue provided that New York's law would apply.
 
 
 25
 Although appellants concede that the Nebraska courts have never addressed the precise question before us today, they argue that the unbroken line of precedent beginning with Miller applies foursquare to preclude enforcement of the accrual date provision at issue in this case. It is clear, however, from both the context and language of the decisions that have applied the Miller rule, that at least thus far the holding has not been extended beyond the blanket prohibition of contractual provisions altering the statute of limitations period itself. First, each case in which Nebraska courts have applied the rule has involved a contractual modification of the statutory limitations period. See Wulf v. Farm Bureau Ins. Co. of Nebraska, 190 Neb. 34, 205 N.W.2d 640, 642 (Neb.1973); Babcock & Wilcox Co. v. Parsons Corp., 298 F.Supp. 898, 904 (D.Neb.1969), aff'd in part and rev'd in part on other grounds, 430 F.2d 531 (8th Cir.1970); Dunlop Tire & Rubber Corp., 171 Neb. 820, 108 N.W.2d 84; Miller v. State Ins. Co. of Des Moines, Iowa, 54 Neb. 121, 74 N.W. 416. Perhaps because the discovery rule is of relatively recent vintage in that state, the Nebraska courts have simply never addressed the issue whether the Miller rule should be extended to prohibit any contractual provisions besides those that modify the statute of limitations.
 
 
 26
 Second, the specific language the Nebraska courts have employed in these cases cannot naturally be read to encompass not only the state's statutes of limitations, but its rules governing dates of accrual as well. The Miller court prohibited enforcement of any contractual provision purporting to modify "in what time an action may be brought." The contractual provision at issue in this case governs not the time in which an action, once accrued, may be brought, but rather establishes the moment at which such action accrues. These are distinct concepts, and there is no reason to suppose that the Nebraska courts would think otherwise. Indeed, this understanding of the temporal relationship between statutes of limitation, which fix the time for bringing an action, and dates of accrual, which start the clock running, is reflected in Nebraska statutes. Thus, for instance, Neb. Rev. Stat. § 25-201 provides that
 
 
 27
 [c]ivil actions can only be commenced within the time prescribed in this chapter, after the cause of action shall have accrued.
 
 
 28
 (emphases added). The Miller court's specific refusal to enforce "contract[s] which provide[ ] that no action shall be brought ... unless within a time therein specified which is different from the time which the statute fixes for bringing an action " must be read in light of this clear statutory distinction. The Miller proscription is aimed at contractual provisions altering the time for bringing an accrued action, not the date of accrual. Indeed, for confirmation of this interpretation of the reach of the Miller/Dunlop rule, we need look no further than the decision of the Nebraska Supreme Court in Wulf . The court in that case noted simply that in Dunlop,
 
 
 29
 this court reaffirmed our previous holdings that it was against the public policy of the State of Nebraska to enter into an agreement changing the statutory limitation period for bringing an action.
 
 
 30
 Wulf, 205 N.W.2d at 642 (emphasis added).
 
 
 31
 It is of course true that the Nebraska courts have not had cause to address the question whether the Miller rule applies in the accrual date context. And it is of course possible that the Nebraska Supreme court, reviewing a provision like section 11.3 in the context of an agreement between sophisticated business actors, might decide to extend Miller 's scope to encompass such provisions. But we think it unlikely. Our inquiry in this regard is informed--and appropriately limited--by the Nebraska courts' frequent admonition that
 
 
 32
 [i]t is not the province of courts to emasculate the liberty of contract by enabling parties to escape their contractual obligations on the pretext of public policy unless the preservation of the public welfare imperatively so demands.... [T]he power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.
 
 
 33
 Southern Nebraska Rural Public Power Dist. v. Nebraska Elec. Generation and Transmission Co-op., Inc., 249 Neb. 913, 546 N.W.2d 315, 319 (Neb.1996) (internal quotations omitted) (alterations in original); OB-GYN v. Blue Cross, 219 Neb. 199, 361 N.W.2d 550, 554 (Neb.1985); E.K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N.W.2d 288 (Neb.1954). We are also mindful that our task as a court sitting in diversity is to "rule upon state law as it exists and [not to] surmise or suggest its expansion." Burris Chemical, Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir.1993) (refusing to apply a discovery rule to a Florida contractual notice provision where no Florida case had done so). See also St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir.1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy.").
 
 
 34
 Given that the Nebraska Supreme Court has never interpreted its own caselaw to apply other than to statutes of limitation and that appellants have not presented even a single case, from any jurisdiction, in which a contractual provision changing the date on which a cause of action accrues has been held to be violative of public policy, we cannot say in light of the principles outlined above that the courts of Nebraska would conclude that the "preservation of the public welfare imperatively ... demands" that the provision go unenforced. Rather, we think it more likely that the Nebraska Supreme Court, like the courts of several of its sister states, would allow sophisticated business actors to contract to eliminate this uncertainty from their business affairs.
 
 
 35
 Accordingly, because we conclude that under either Maryland or Nebraska law, section 11.3 is enforceable, we must agree with the district court that appellants' action is barred by the operation of the three-year statute of limitation.*
 
 CONCLUSION
 
 36
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 
 37
 AFFIRMED.
 
 
 
 *
 We affirm as well the district court's dismissal without prejudice of appellants' claim to indemnification for damages occurring prior to September 11, 1997