752 A.2d 265

**COLLEGE OF NOTRE DAME OF MARYLAND, INC.**

v.

**MORABITO CONSULTANTS, INC., et al.**

No. 327, Sept. Term, 1999.

Court of Special Appeals of Maryland.

March 9, 2000.

James D. Skeen (James W. Constable and Wright, Constable & Skeen, LLP, on the brief), Baltimore, for appellant.

John A. King (Kenneth D. Smith and King & Attridge, on the brief), Rockville, for appellees.

Argued before EYLER, SONNER and ROBERT L. KARWACKI (Ret., specially assigned), JJ.

EYLER, Judge.

The issue in this case, one of first impression, is whether a provision in a contract is valid that purports to state when a cause of action accrues for breach, and if so, whether it can be used as a defense by a party to the contract in a suit by a nonparty to that contract. More specifically, the owner of a building contracted with an architect to perform design services and the architect contracted with a structural engineer to perform the structural engineering portion of the design services. Both contracts contained the accrual provision. The owner sued the structural engineer.

## Factual Background

The College of Notre Dame of Maryland, Inc., appellant, owns and operates a college located at 4701 North Charles Street in Baltimore City. The main administration building on campus is Gibbons Hall. Appellant decided to renovate Gibbons Hall, which included the conversion of space on the fifth floor from residential use to office and classroom use.

Appellant retained the architectural firm of Brown, Worrall & Johnson, Inc., to provide architectural services. The contract entered into between appellant and the architect was a standard American Institute of Architects (AIA) document, designated B141 (1987 ed.). The contract was dated December 12, 1989, and was signed on January 25, 1990. The

contract included "normal structural, mechanical, and electrical engineering services."

On September 22, 1989, Morabito Consultants, Inc., a structural engineering firm and an appellee herein, submitted a proposal to the architect for "professional consulting structural engineering services for the structural review of Gibbons Hall." The proposal was based on an hourly fee with the total not to exceed $2,000. The proposal indicated that, following a review of the building, appellee would submit a structural analysis, which would outline any necessary repairs for the building to safely support "all superimposed live and dead loads as required by the BOCA 1987 building code." The proposal was not signed by the architect.

Morabito Consultants, Inc. proceeded with its review, however, and submitted a report dated October 26, 1989, in which it stated that the building was structurally sound. In pertinent part, in a section labeled "Fifth Floor & Attic Framing," Morabito Consultants, Inc. stated that the trusses did not need structural repair but recommended that, during the renovation of the building, it review the condition of the bottom cord of the trusses. In its report, Morabito Consultants, Inc. concluded that the building was structurally sound and capable of supporting all superimposed live and dead loads as required by the applicable building code.

At the architect's request, Morabito Consultants, Inc. visited the project on May 24, 1990, "in order to review the existing structure to assess what effect the proposed alterations have on this facility...." In the report dated May 25, 1990, relating to that visit, there was no mention of the trusses.

On September 18, 1990, the architect and Morabito Consultants, Inc. executed an agreement dated September 10 for consulting structural engineering services for the proposed renovations at Gibbons Hall. The agreement provided for a lump sum fee of $2,000 and any additional services to be provided at an hourly rate. It provided that the engineering services would meet the design requirements contained in the contract between appellant and the architect. It also specified

that certain articles contained in AIA document C141, architect-consultant agreement, sixth edition, 1987, were incorporated into the contract between the architect and Morabito Consultants, Inc., including article 9.3.

Article 9.3 in the contract between appellant and the architect (Form B141) and in the contract between the architect and Morabito Consultants, Inc. are identical. Article 9.3 provides:

> Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

On March 26, 1991, Morabito Consultants, Inc. inspected the building and, in a letter dated April 3, 1991 directed to appellant, stated that the building was structurally sound. At that time, some of the walls and ceilings had been removed. The report stated that "a visual review" was performed but that "the majority of the building structure is still covered by ceilings and walls." In pertinent part, the report indicated that no structural modifications needed to be made to the trusses. It also recommended that a representative of appellant climb into the truss space and visually inspect all of the trusses for pipe penetrations through the individual truss members and to notify appellee if any such conditions were found.

In 1997, on a routine inspection of the building, appellant found significant movement "internal to the building" on the fifth floor. It retained Whitney, Bailey, Cox & Magnani, consulting engineers, to inspect the building. That firm did so and concluded that the design team for the renovation, which included Morabito Consultants, Inc., had failed to calculate properly the increase in live loads associated with the change

in occupancy of the building. As a result of the increase in loads, the truss system was overstressed.

On December 9, 1998, appellant filed a complaint in the Circuit Court for Baltimore City against Morabito Consultants, Inc. and Frank T. Morabito, a professional engineer associated with the firm, appellees. Appellant sued in negligence and breach of contract and alleged that appellees were hired to perform a structural analysis but failed to advise of problems, specifically, problems with the trusses. Appellants sought damages for the cost of repairs to the extent that they exceeded the amount that would have been expended had the problem been disclosed by appellees in April 1991.

Appellees filed a motion to dismiss the complaint on the ground that article 9.3 in the January 25, 1990 contract between appellant and the architect, incorporated in the contract between the architect and Morabito Consultants, Inc., was applicable and required the action to be filed within three years after substantial completion of construction. Consequently, according to appellees, the action was time-barred. Appellant opposed the motion and filed affidavits in support of its opposition. As a result, the circuit court treated the motion as a motion for summary judgment and, on March 3, 1999, granted it. Appellant filed a motion for reconsideration, which was denied, and then noted an appeal to this Court. The question before us is whether the circuit court erred in granting summary judgment in favor of appellees.

Appellant makes two arguments. First, appellant contends that a genuine issue of material fact exists as to whether the services rendered on March 26, 1991, as distinguished from the services rendered prior to that time, were in fulfillment of the obligations contained in the contract between appellant and the architect. Appellant's position is that it contracted directly with appellees for the March 26, 1991 services, and the standard form of agreement between appellant and the architect had no application to those services. Additionally, with respect to Mr. Morabito individually, appellant argues that he was sued for services personally rendered by him, and

he was not a party to the contract between the architect and Morabito Consultants, Inc. Thus, according to appellant, the contract could not apply to services rendered by him.

Second, appellant asserts that if the services were rendered in fulfillment of the contractual obligations of the architect to appellant, article 9.3 should not be enforced because it is ambiguous or not sufficiently clear and definite to warrant taking away a fundamental right of appellant. Appellant acknowledges that the project was substantially completed by the end of 1991 and that this action was filed too late and is barred unless the discovery rule applies. Because article 9.3 effectively eviscerates the discovery rule, according to appellant, a clear statement of intention is required. · Appellant points to the language in (1) article 9.3 that refers to "causes of action between the parties to this agreement" and does not expressly refer to consultants; (2) article 9.5 that prohibits assignment of the agreement without the written consent of the other party; and (3) article 9.7 that states the agreement represents the entire and integrated agreement between the parties.

## Standard of Review

Maryland Rule 2–501(a) provides that "[a]ny party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Thus, "[i]n order to grant summary judgment, the trial court must determine that no genuine dispute exists as to any material fact, and that one party is entitled to judgment as a matter of law." *Crews v. Hollenbach*, 126 Md.App. 609, 624, 730 A.2d 742, *cert. granted,* 356 Md. 16, 736 A.2d 1064 (1999); *Green v. Brooks,* 125 Md.App. 349, 365, 725 A.2d 596 (1999); *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.,* 120 Md.App. 538, 546, 707 A.2d 913 (1998).

To defeat a motion for summary judgment, the party opposing the motion must produce evidence demonstrating

that the parties genuinely dispute a material fact. *Scroggins v. Dahne*, 335 Md. 688, 691, 645 A.2d 1160 (1994); *Chicago Title Ins. Co.*, 120 Md.App. at 547, 707 A.2d 913. Even if the non-moving party demonstrates the existence of a disputed fact, it will not defeat the motion for summary judgment unless the dispute concerns a material fact. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Keesling v. State,* 288 Md. 579, 583, 420 A.2d 261 (1980); *Miller v. Fairchild Indus., Inc.*, 97 Md.App. 324, 340, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993). Further, to demonstrate an adequate factual dispute, the non-moving party must present more than "mere general allegations which do not show facts in detail and with precision.... " *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993). All reasonable inferences drawn from the facts, however, must be resolved in favor of the non-moving party. *Green,* 125 Md.App. at 365, 725 A.2d 596; *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 387, 693 A.2d 370 (1997); *see also Berkey v. Delia,* 287 Md. 302, 304–05, 413 A.2d 170 (1980).

■■ When there is no dispute of any material fact, we review the trial court's decision to determine whether the court reached the correct legal result. *Beatty,* 330 Md. at 737, 625 A.2d 1005; *Chicago Title Ins. Co.*, 120 Md.App. at 547, 707 A.2d 913. Generally, appellate courts review a grant of summary judgment based only on the grounds relied upon by the trial court. *IA Constr. Corp. v. Carney,* 341 Md. 703, 708 n. 4, 672 A.2d 650 (1996); *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872 (1995); *Gross v. Sussex, Inc.*, 332 Md. 247, 254 n. 3, 630 A.2d 1156 (1993); *McGraw v. Loyola Ford, Inc.*, 124 Md.App. 560, 723 A.2d 502, *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999); *Hoffman v. United Iron & Metal Co.*, 108 Md.App. 117, 132–33, 671 A.2d 55 (1996).

### Principles of Contract Interpretation

■■ Principles of contract interpretation are relevant to the issues before us, and we pause briefly to review them. Maryland courts apply an objective standard when interpreting and construing contracts. *See, e.g., General Motors Ac-*

*ceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985); *Aetna Cas. & Sur. Co. v. Insurance Comm'r,* 293 Md. 409, 420, 445 A.2d 14 (1982). The principal goal in the interpretation of contracts is to effect the intention of the parties. *Kasten Constr. Co., Inc. v. Rod Enters., Inc.,* 268 Md. 318, 328, 301 A.2d 12 (1973); *McIntyre v. Guild, Inc.,* 105 Md.App. 332, 355, 659 A.2d 398 (1995).

When a contract's language is expressed in clear and unambiguous terms, the court will not engage in construction, but will look solely to what was written as conclusive of the parties' intent. *General Motors,* 303 Md. at 261, 492 A.2d 1306. In *General Motors,* the Court of Appeals set forth the following standard:

> A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed.

*Id.*

## Discussion

### A. Interpretation of the Contracts

We address appellant's arguments in inverse order. Appellant argues that the accrual clauses in the contracts in question are ambiguous or, at least, are not sufficiently clear and definite to be enforceable. Appellant argues that article 9.3 is akin to an exculpatory provision and, therefore, should be read more stringently. We do not agree.

Exculpatory clauses are generally valid, but they must be unequivocal and clear, not merely unambiguous. *See Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 259, 686 A.2d 298 (1996). An exculpatory clause relieves a party from liability for harm caused by his or her own negligence. *See id.* at 261, 686 A.2d 298.

Article 9.3 of the contracts between the parties in this case does not relieve any of the parties from liability. Instead, it alters the time for accrual of a cause of action from what the law would otherwise impose. None of the cases that have recognized the right to contractually modify a limitations period or the time for accrual of a cause of action, discussed below, have referred to such provisions as exculpatory. Such contractual modifications are generally not disfavored in the law. Indeed, all of the cases in which the provision in question or a similar one have been considered have held it to be enforceable. Such contractual clauses are supported by the public policy in favor of parties' freedom to contract. With respect to such policy, *see, e.g., Federal Maritime Comm'n v. Pacific Maritime Ass'n,* 435 U.S. 40, 70, 98 S.Ct. 927, 55 L.Ed.2d 96 (1978)(Powell, J., dissenting); *H.K. Porter v. NLRB,* 397 U.S. 99, 107, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970); *Wolf v. Ford,* 335 Md. 525, 531, 644 A.2d 522 (1994); *Leet v. Totah,* 329 Md. 645, 662, 620 A.2d 1372 (1993); *Anne Arundel County v. Hartford Accident & Indem. Co.,* 329 Md. 677, 686, 621 A.2d 427 (1993); *Condry v. Laurie,* 184 Md. 317, 326, 41 A.2d 66 (1945).

We conclude that the disputed contract provision is unambiguous and susceptible of only one meaning. It specifies a clear date for accrual of a cause of action. In passing, we note that we would reach the same conclusion if we applied a heightened standard of scrutiny.

## B. Materiality of Issues

Appellant argues that it created a genuine issue of fact with respect to whether it contracted directly with appellees for the March 26, 1991 services. We agree. Appellant supported its opposition to summary judgment with affidavits from Phillip W. Worrall, an architect with the architectural firm in question, and Joseph Caruso, Director of Facility Management for appellant. The affiants stated that engineering services were required in the contract between appellant and Morabito Consultants, Inc., but that the inspection on March 26, 1991 was undertaken pursuant to an agreement between appellant

and appellees, and appellees did not perform those services as consultants for the architect.

While this created a genuine dispute of fact, in our view, it was not a material fact. The complaint and other documentation filed by appellant, including the report of its consulting engineers, indicate that the problems in the building were as a result of defective design, based on a failure to calculate loads associated with the conversion of the use of space and the change in occupancy. Morabito Construction, Inc. performed a design analysis pursuant to the contracts between it and the architect and appellant and the architect. The complaint is not based on alleged visual deficiencies of the trusses that may or may not have existed on March 26, 1991.

## C. Limitation of Actions

In Maryland, the general statute of limitations is codified at Md.Code, Cts. & Jud. Proc. § 5–101 (Repl.Vol. 1998). This provision establishes a three-year period, from the date a cause of action "accrues," within which to file a civil action. In Maryland, as a general rule, a cause of action accrues on the date of the alleged wrong. *See, e.g., Waldman v. Rohrbaugh,* 241 Md. 137, 139, 215 A.2d 825 (1966); *Killen v. George Washington Cemetery, Inc.,* 231 Md. 337, 343, 190 A.2d 247 (1963) (citations omitted).

Recognizing the potential for unfairness in application of the rule in certain cases, the Maryland courts have adopted the "discovery rule," which suspends accrual of the statute of limitations until events have occurred that are reasonably likely to put a plaintiff on notice of a claim. *See Doe v. Archdiocese of Wash.,* 114 Md.App. 169, 176–77, 689 A.2d 634 (1997). The discovery rule holds that certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct. *See Pennwalt Corp. v. Nasios,* 314 Md. 433, 453, 550 A.2d 1155 (1988).

Courts have acknowledged that the discovery rule is well suited to determine the date of accrual of a cause of action for negligent design. *See Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 443–44, 258 A.2d 177 (1969) (noting that Maryland courts had applied the discovery rule in various types of professional malpractice actions and holding that the owners' cause of action for negligence against the architect who designed the building for the owners accrued upon discovery of the defect therein); *see generally* Jane Massey Draper, Annotation, *When Statute of Limitations Begins to Run on Negligent Design Claim Against Architect*, 90 A.L.R.3d 507 (1979 & Supp.1999)(collecting and citing cases).

 Appellant contends that, pursuant to the discovery rule, its action was timely because it was filed "a little more than one year after the problem was first discovered after attempts to resolve the matter failed." Appellant points to Md.Code (1974, 1998 Repl.Vol.), § 5–108 of the Courts and Judicial Proceedings Article, for the proposition that the Legislature has codified the discovery rule with respect to actions against architects, professional engineers, and contractors.[1]

---

1. Section 5–108, in pertinent part, provides:

§ 5–108. Injuries after improvements to property

(a) Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

(c) upon accrual of a cause of action referred to in subsections (a) and (b) of this section, an action shall be filed within 3 years.

. . . .

(e) A cause of action for an injury described in this section accrues when the injury or damage occurs.

In our view, section 5–108 has little relevance to the issue before us. Section 5–108 does not address the discovery rule; it is a statute of repose. Additionally, the statute applies to injury to person or property, and is, therefore, inapplicable here.

The contracts in question expressly provided the time for accrual of a cause of action. In the absence of a controlling statute, we are presented with the question of whether such a provision is legally valid.

We begin by examining whether the limitations period provided by a legislative body is subject to modification by agreement. Unlike some other states, the Maryland general statute of limitations does not expressly prohibit its modification. In the absence of a controlling statute, some state courts have held that, as a general rule, a contract provision limiting the time for bringing an action thereon is valid if the stipulated period of time is reasonable.

The Court of Appeals appears to agree with that principle. In *Amalgamated Cas. Ins. Co. v. Helms*, 239 Md. 529, 212 A.2d 311 (1965), the Court upheld a contractual limitations period in an automobile liability policy. The Court held that the provision prohibiting any action against the insurer unless commenced within two years and one day after date of any judgment secured against the insured was reasonable and lawful. Subsequent to that decision, the Legislature declared provisions in insurance and surety contracts that shortened periods of limitation to be against public policy and unlawful. *See* Md.Code (1974, Repl.Vol.1998), § 12–104 of the Insurance Article (original version at Md.Code (1957, 1994 Repl.Vol.), Art. 48A § 377B); *see also General Ins. Co. of America v. Interstate Serv. Co., Inc.*, 118 Md.App. 126, 133–38, 701 A.2d 1213 (1997), *cert. denied*, 349 Md. 103, 707 A.2d 89 (1998), *cert. denied*, 350 Md. 276, 711 A.2d 869 (1998)(citing Md.Code Ann. (1957, 1994 Repl.Vol.), Art. 48A § 377B)(discussing the validity of contractual limitations provision in insurance contracts).

Maryland courts have not ruled, however, on the validity of contractual limitations provisions in building or construction

contracts. Other state courts, in the absence of statute and subject to a finding of reasonableness, have held such provisions valid and enforceable. *See generally* Annotation, *Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing Action,* 6 A.L.R.3d 1197, 1240–41 (1966 & Supp.1999)(collecting and citing cases).

The Supreme Court has recognized the general principle that parties' freedom to contract should be given effect absent clear policy considerations to the contrary. *See Missouri, Kan. & Tex. Ry. Co. v. Harriman Bros.,* 227 U.S. 657, 672, 33 S.Ct. 397, 57 L.Ed. 690 (1913). The Court explained that the policy underlying statutes of limitations is to "encourage promptness in the bringing of actions, [so] that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents, or failure of memory." *Id.* at 672, 33 S.Ct. 397. The Court concluded that "there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short." *Id.*

The Fourth Circuit has adhered to the principle that parties may contract for shorter limitations periods, noting that "it is well settled that such a provision, if reasonable in extent, is within the power of the parties and is binding upon them, even if the stipulated period is shorter than set up in the statutes of limitation otherwise applicable." *Atlantic Coast Line Ry. Co. v. Pope,* 119 F.2d 39, 44 (4th Cir.1941).

The Court of Appeals also has recognized the freedom of parties to contract, stating that:

Maryland courts have been hesitant to strike down voluntary bargains on public policy grounds, doing so only in those cases where the challenged agreement is patently offensive to the public good, that is, where 'the common sense of the entire community would ... pronounce it' invalid. This reluctance on the part of the judiciary to nullify contractual arrangements on public policy grounds also serves to protect the public interest in having individuals exercise broad powers to structure their own affairs by

making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle.

*Maryland–National Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 606, 386 A.2d 1216 (1978)(alterations in original) (citations omitted).

 In light of these well-settled holdings recognizing that parties' freedom to contract should be given effect absent clear policy considerations to the contrary, we conclude that parties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation. In terms of the enforceability of the specific accrual provisions in the documents at issue in this case, there is more limited judicial guidance. Further, the validity of the accrual provision is an issue of first impression in Maryland.

## D. AIA Documents Generally

The standard form contracts drafted by the AIA are widely used. One author has stated that the AIA documents are the most widely used standard form contracts in the construction industry. *See* 1 Steven G.M. Stein, *Construction Law,* ¶ 3.02[1][b] (Matthew Bender 1999)(footnote omitted) (stating that AIA forms "have the longest history and are the most widely used and well known of the standard forms.").

The Royal Institute of Architects began publishing a form of construction contract in 1870. *See id.* The AIA followed this example and began to publish a type of construction contract in 1888. *See id.* The modern versions of the AIA standard form documents are revised, updated, and expanded approximately every seven to ten years "to reflect the changing conditions in the construction industry, but many of the relationships and principles embodied in those first documents have remained unchanged." *Id.*

Beginning in the late 1950's, the principal documents promulgated by the AIA were designated as "A-series" (owner-

contractor), "B-series" (owner-architect), "C-series" (architect-consultant), "D-series" (architect-industry) and "G-series" (architect's office and project) documents. *See id.* For an overview of these standard form contracts, *see generally,* Werner Sabo, *Legal Guide to AIA Documents* (4th ed. 1998 & Supp.2000); Justin Sweet & Jonathan J. Sweet, *Sweet on Construction Industry Contracts: Major AIA Documents* (3rd ed.1996).

In particular, B-series documents are drafted entirely by the AIA, using "(1) its professional staff to organize the process and refine the product, (2) its members to draft the language, and (3) its insurance and legal counsel to advise and, in matters of liability, in effect dictate the language." 1 Sweet, *supra,* at § 3.4. In this case, the AIA B141, Standard form of Agreement between Owner and Architect (14th ed.1987) contract was used. Certain portions of the AIA C141, Standard Form Architect–Consultant Agreement (6th ed.1987), were also used. The drafting process for the C-series documents is less clear.

## E. Enforceability of the AIA Accrual Clauses

Article 9.3 of the 1987 AIA B141 standard form agreement, in part, provides: "Causes of action between the parties to this Agreement ... shall be deemed to have accrued and applicable statutes of limitations shall commence to run not later than ... the date of Substantial Completion...."

As previously mentioned, the validity of such an accrual clause is an issue of first impression in Maryland. At least four cases, however, have addressed the enforceability of a construction contract accrual clause. All of the courts concluded that the accrual clause was enforceable.

Recently, in *Harbor Court Associates v. Leo A. Daly Co.,* 179 F.3d 147 (4th Cir.1999), the Fourth Circuit, applying Maryland law, held that the accrual clause in the owner-architect contract before it, which was substantively similar to

the provision before us,[2] was a proper and effective limitation on the discovery rule. In *Harbor Court*, an architect from Nebraska was hired to design a building located in Baltimore, Maryland. *Id.* at 148. A certificate of final completion was issued on September 11, 1987. *Id.* In April 1996, a fifteen-square-foot area of exterior brick unexpectedly exploded from the face of the building. *Id.* at 149. On September 20, 1996, the developer sued the general contractor and later filed a complaint against the architect for negligence, breach of contract, and indemnification. *Id.* The architect moved for summary judgment, arguing that the statute of limitations, by contract, began to run on September 11, 1987. *Id.* The trial court agreed and granted summary judgment. *Id.*

The Fourth Circuit, in *Harbor Court*, noted that Maryland has a long history of applying the discovery rule to determine when a statute of limitations begins to run. *Id.* at 150. The court, however, found that this rule had to be balanced against a strong reluctance in Maryland to strike down voluntary bargains on the basis of public policy. *Id.* at 150–51. The court concluded that under Maryland law the parties were free to contract that the statute of limitations would commence to run at the time of final completion. *Id.* at 151.

In that case, the court also examined Nebraska law, which held that any attempt by contract to alter statutes of limitations was against public policy and unenforceable. *Id.* at 152. The Fourth Circuit, however, distinguished the statute of limitations period from the time for accrual of a cause of action. *Id.* The court concluded that Nebraska would recognize a contractually agreed time for accrual of a cause of action as long as the actual limitations period was not modified. *Id.* at 153. The court, therefore, affirmed the summary judgment on the basis that, under either Maryland or Nebraska law, the contract established the date for the commencement of the statute of limitations, and the period of limitations

---

2. The contract was apparently a modified version of AIA form B141.

had expired prior to institution of the suit against the architect. *Id.*

Similarly, in *Old Mason's Home of Kentucky, Inc. v. Mitchell,* 892 S.W.2d 304 (Ky.Ct.App.1995), the owner of a building sued its architect for damages arising out of water penetration problems in a wall of the building. The Kentucky Court of Appeals was presented with a contractual provision substantively similar to the one at issue in this case. Without the provision, pursuant to Kentucky law, the accrual of the causes of action against the architect for negligent design and supervision would have been governed by the discovery rule. *Id.* at 305–06. The Kentucky court enforced the provision of the contract that stated that the causes of action accrued not later than the date of substantial completion. *Id.* at 307.

In *Oriskany Central Sch. Dist. v. Edmund J. Booth Architects,* 206 A.D.2d 896, 615 N.Y.S.2d 160 (1994), *aff'd* 85 N.Y.2d 995, 630 N.Y.S.2d 960, 654 N.E.2d 1208 (1995), a school district brought an action against an architectural firm for breach of contract and malpractice. The action arose out of the architectural firm's services rendered in connection with the reroofing of certain schools. *Id.* at 161. Again, the provision in question was substantively similar to the one before us. The New York court held that the parties were free to contract with respect to the time for accrual of a cause of action and that such provisions were enforceable in the absence of duress, fraud, or misrepresentation. *Id.* at 161–62.

In *Keiting v. Skauge,* 198 Wis.2d 887, 543 N.W.2d 565 (1995), the Wisconsin Court of Appeals dealt with a contractual provision that shortened the period of limitations and specified the time for accrual of a cause of action. A homeowner sued a home inspection company, alleging that the company had failed to report defects in the home. *Id.* at 567–68. By statute, Wisconsin recognizes the right of parties to contract for a shorter period of limitations than that provided by Wisconsin law. In *Keiting,* the court perceived no reason why parties should be able to contract for a shorter limitations period but not be able to assign a date from which the period

of limitations would run. *Id.* The court found that "where parties freely and voluntarily wish to alter that state of affairs, public policy supports their right to do so." *Id.* at 567.

In light of the strong public policy in favor of freedom to contract, the recognized ability of parties to agree to a shorter period of limitations, and the construction by other jurisdictions of similar accrual clauses, we conclude that the provision in the parties' contracts that alters the normal rules governing the time for accrual of causes of action is enforceable.

We do not purport, by virtue of our holding, to address the validity of contractual suit limitations in all cases. In this case, there is no suggestion of duress, fraud, misrepresentation, or unequal bargaining power. The result might well be different in those circumstances. Additionally, our holding is limited to a suit for repair costs by a contracting party. We are not addressing claims for damages to person or property sustained by a contracting party or for contribution/indemnity by a contracting party as a result of an action brought by a third party against the contracting party.

There is no dispute that appellant failed to file suit against appellees within three years of the date of substantial completion or the date of the issuance of the final certificate for payment for the project. Accordingly, appellees are entitled to summary judgment on appellant's claims based on the statute of limitations if appellees are entitled to rely on that defense.

### F. Consultant's Liability

Assuming the validity of the accrual provision, appellant further argues that, because there was no direct contractual relationship between appellant and appellees, the circuit court erred in holding that appellees could rely on it. Appellees, in countering, rely on the theories of third party beneficiary, estoppel, and assignment. We turn our attention to those theories, but we first observe that we are unaware of any reported decision in the country that is squarely on point.

### 1. Third Party Beneficiary

Appellees argue that appellant is a creditor beneficiary of the contract between the architect and Morabito Consultants, Inc. because performance of the latter's promises satisfied the duty of the architect to the owner to provide engineering services. As such, Morabito Consultants, Inc. may raise in defense to the appellant's claims all of the contract provisions in the same manner that those provisions would be available in a similar action brought by the architect.

 In determining whether a party is a third party beneficiary to a contract, the controlling issue is whether the contract's terms, in light of the surrounding circumstances, reveal an intent to make the promise to the third party in fact if not in form. *See Flaherty v. Weinberg*, 303 Md. 116, 131, 492 A.2d 618 (1985)(involving attorney's liability to third parties for malpractice); *Spates v. Spates*, 267 Md. 72, 77, 296 A.2d 581 (1972) (stating that a third party beneficiary must be privy to the promise). A third party who is only an incidental beneficiary acquires no rights in the contract. *Bolick v. Board of Education*, 256 Md. 180, 184, 260 A.2d 31 (1969).

 Both the promissee and the beneficiary may enforce the contract, *Trupp v. Wolff*, 24 Md.App. 588, 594, 335 A.2d 171 (1975), with the third party beneficiary bound by the contract provisions. *District Moving & Storage Co. v. Gardiner & Gardiner, Inc.*, 63 Md.App. 96, 102–03, 492 A.2d 319, *aff'd*, 306 Md. 286, 508 A.2d 487 (1986).

In *District Moving & Storage*, this Court articulated that "[o]ne is a creditor beneficiary when performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." *District Moving & Storage*, 63 Md.App. at 102, 492 A.2d 319. In that case, the parties agreed that the plaintiff lessee was a third party beneficiary of a contract between an architect and construction company. We held that the third party beneficiary was bound by the arbitration provision contained in the contract and stated that:

[T]he Court of Appeals [has] explained that "a third party beneficiary takes subject to the same defenses against the enforcement of the contract, as such, as exist between the original promisor and promissee." Thus, in a situation where a third party beneficiary sues a promisor, the promisor may utilize precisely the same defenses available against the promissee, no more, no less.

63 Md.App. at 104, 492 A.2d 319 (quoting *Shillman v. Hobstetter*, 249 Md. 678, 690, 241 A.2d 570 (1968)).

■■■ We believe the reasoning in *District Moving & Storage* is applicable to the issue before us. We conclude that appellant, assuming it to be a third party beneficiary, would be barred by limitations because appellees could rely on the accrual clause. We need not actually decide this issue, however, because it would constitute a bar only with respect to the contract claim. The viability of the negligence claim, aside from the limitations issue, is not before us. Assuming it is otherwise viable, we move to a discussion of estoppel.

### 2. Estoppel

■■■ The existence of estoppel is a question of fact to be decided in each case. *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 343 A.2d 529 (1975); *cf. Umans v. PWP Serv., Inc.*, 50 Md.App. 414, 439 A.2d 21 (1982); *see also C & P Tele. Co. of Md. v. Scott*, 77 Md.App. 121, 549 A.2d 425 (1988), *cert. denied*, 314 Md. 496, 551 A.2d 867 (1989).

In *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986), the Court of Appeals approved the following definition of equitable estoppel:

Equitable estoppel is the effect of the voluntary conduct of a party whereby he [or she] is absolutely precluded both at law and in equity from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his [or her] position for the worse.

*Id.* at 534, 510 A.2d 546 (quoting Pomeroy, *Equity Jurisprudence* § 804 (5th ed.1941)).

In its brief, appellee relies on three cases employing estoppel: *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir.1984); *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir.1981); and *Dunn Constr. Co., Inc. v. Sugar Beach Condominium Assoc., Inc.*, 760 F.Supp. 1479 (S.D.Ala.1991). Those courts employed estoppel to prevent a claimant from relying on the lack of a direct contractual link with a defendant so as not to permit the defendant to utilize and rely on provisions in its contract. Appellant attempts to distinguish these cases by arguing that the cases all involve a non-party to a contract seeking to avoid the effect of an arbitration clause in the contract while pursuing a claim against a party to the contract. Despite this factual difference, we conclude that the same rationale applies here.

In *Hughes Masonry Co.*, a masonry contractor entered into a contract with a county entity to provide masonry services incidental to the construction of two schools. 659 F.2d at 837. At the same time, an architectural and engineering firm was under contract to the county. *Id.* No contract existed, however, between the masonry contractor and the architectural firm. The owner terminated its contract with the masonry subcontractor and completed the project using another contractor. *Id.* at 837–38. The contract between the masonry contractor and the owner contained an arbitration clause, and the owner filed a demand for arbitration to recover the cost to complete the project. *Id.* at 838. Thereafter, the masonry contractor filed an action against the architectural firm for intentional and negligent interference with its contract with the owner, and the architectural firm filed a motion to compel arbitration. *Id.* The masonry contractor argued that, because there was no agreement between it and the architectural firm, the architectural firm should not be permitted to invoke the arbitration provisions of the mason's contract with the owner. *Id.* The court rejected this contention, finding that the masonry contractor was equitably estopped from

asserting the absence of contract because the mason was alleging breach of the architect's duty as delegated to the architect under the contract between the county and the mason. *Id.* at 839. The court concluded that while the mason had characterized its claims against the architect as sounding in tort, in substance the mason was attempting to hold the architect to the terms of the contract. *Id.* Therefore, the court found it would be inequitable to permit the masonry contractor to claim both that the architect "is liable to [the mason] for its failure to perform contractual duties described in the [mason-owner] agreement and at the same time deny that [the architect] is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause." *Id.*

In *McBro Planning & Dev. Co.,* an electrical contractor and a construction manager had separate contracts with the owner, both of which contained an arbitration clause. 741 F.2d at 342. The contractor sued the manager for intentional interference with contract and negligence. *Id.* at 343. The manager requested arbitration and the contractor asserted that there was no written agreement between the parties containing an arbitration clause. The court found that despite the lack of an express agreement between the parties, the contractor was bound by the clause because "the contractor's claims are intimately founded in and intertwined with the underlying contract obligations." *Id.* at 344.

In *Dunn Constr. Co., Inc.,* a foreclosing bank, that had provided construction financing, sued the general contractor and its surety for recovery of repair costs. 760 F.Supp. at 1480. The bank based its claims in negligence and fraud. *Id.* at 1481. Again, both the defendants filed a petition to compel arbitration. *Id.* Even though the bank was not a signatory to the owner/contractor agreement, the court found that the bank was bound by the terms of that agreement. *Id.* at 1483. The court based its determination on the bank's "intimate perhaps even integral, position with respect to the [owner/contractor] relationship." *Id.* at 1484.

We find that the principles espoused in *Hughes Masonry*, *McBro*, and *Dunn*, apply to the issue before us because, while the appellant in the instant case included allegations in tort, its claims are ultimately dependent on and intertwined with Morabito Consultants, Inc.'s contractual duty to furnish engineering services. The contracts in this case were coordinated. The parties had consistent and complementary rights and responsibilities. The owner, in an action against the architect, would be bound by the accrual provision. As a claimant in the contractual chain, it should not be permitted to assert the lack of a direct written contract with a consultant to the architect to circumvent the enforcement of the accrual provision contained in the architect's contract with the owner and the consultant's contract with the architect. The consultant's agreement accepted and reiterated the accrual provisions of the prime agreement. When a consultant to the architect has entered into a contract that governs the manner, scope, and conditions of its services, consistent in all respects with the terms and conditions governing the service provided by the architect, it is contrary to equity to allow the owner to avoid the terms and conditions essential to the consultant's undertaking with the architect. Accordingly, we believe that the application of equitable estoppel is appropriate in these circumstances.

In light of our disposition of this issue, we need not consider the question of assignment.

### G. Morabito Individually

Appellant makes no argument with respect to Morabito that is different from appellant's arguments with respect to Morabito Consultants, Inc. Given that appellant's claim is for breach of the design obligation undertaken by Morabito Consultants, Inc. and a separate oral contract, assuming one existed, with Morabito or Morabito Consultants, Inc. is immaterial, there would appear to be no additional arguments available. Consequently, there is nothing further for us to address.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.