Facilities Cost Management Group, LLC,
appellee and cross-appellant, v. Otoe County
School District 66-0111, also known as
Nebraska City Public Schools,
appellant and cross-appellee.

___ N.W.2d ___

Filed August 21, 2015.    No. S-14-380.

1. **Summary Judgment.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.

3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

4. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.

5. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.

6. ____. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.

7. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

8. **Contracts.** The meaning of an ambiguous contract is generally a question of fact.

9. ____. Extrinsic evidence is not permitted to explain the terms of a contract that is not ambiguous.

10. **Contracts: Intent.** When a contract is unambiguous, the intentions of the parties must be determined from the contract itself.

11. **Contracts.** A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.

12. \_\_\_\_. When a court has determined that ambiguity exits in a document, an interpretive meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder.

13. **Contracts: Parol Evidence.** A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous.

14. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Reversed and remanded for a new trial.

Larry E. Welch, Sr., Larry E. Welch, Jr., and Damien J. Wright, of Welch Law Firm, P.C., for appellant.

Steven E. Achelpohl and John A. Svoboda, of Gross & Welch, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

NATURE OF CASE

Otoe County School District 66-0111, also known as Nebraska City Public Schools (the District), and Facilities Cost Management Group, LLC (FCMG), entered into a contract wherein FCMG would provide architectural, representative, and managerial services in connection with the construction and renovation of three schools within the District. FCMG filed an amended complaint in the district court for Douglas County against the District, alleging that the District had breached the contract by failing to pay the full amount due under the contract, and FCMG sought approximately

$2 million in damages. The parties filed cross-motions for partial summary judgment; the District generally argued that the contract was ambiguous, specifically sections 11.2 and 12.7, and FCMG generally argued that the contract was not ambiguous. The district court granted FCMG's motion and denied the District's motion based upon its determinations that sections 11.2 and 12.7 were not ambiguous due to their language and the parties' course of dealings.

After a jury trial, the district court entered judgment on the jury's verdict for FCMG in the amount of $1,972,993. The district court denied the District's motion for judgment notwithstanding the verdict or for new trial. The District appeals, and FCMG cross-appeals. We determine that the district court did not err when it determined that section 12.7 of the contract is not ambiguous, but it erred when it determined that section 11.2 is not ambiguous. Accordingly, the court committed prejudicial error when it gave jury instruction No. 2, which stated that "the contract in this case is not ambiguous." As explained below, we reverse, and remand for a new trial.

STATEMENT OF FACTS

The threshold issue presented in this appeal is whether sections 11.2 and 12.7 of the contract are ambiguous. The contract is based on a 1987 version of the American Institute of Architects' "Standard Form of Agreement Between Owner and Architect." As the Court of Special Appeals of Maryland has observed:

> The standard form contracts drafted by the [American Institute of Architects (AIA)] are widely used. One author has stated that the AIA documents are the most widely used standard form contracts in the construction industry. *See* 1 Steven G.M. Stein, *Construction Law*, ¶ 3.02[1][b] (Matthew Bender 1999)(footnote omitted) (stating that AIA forms "have the longest history and are the most widely used and well known of the standard forms.").

*Notre Dame v. Morabito*, 132 Md. App. 158, 174, 752 A.2d 265, 273-74 (2000). However, the parties customized some sections of the contract, including sections 11.2 and 12.7 at issue in this case. The contract defines the District as the "Owner" and FCMG as the "Architect" even though the activities of FCMG were not limited to architectural services.

Pertinent sections of the contract are quoted below. Section 11.2, one of the customized provisions of the contract, is titled "**BASIC COMPENSATION**," and it provides:

> Fees shall be as outlined in the attached Recommended Compensation schedule as applicable to each component facility of the Project and shall be included in various categories of the Project Budget for Basic Services for Site and Construction work, Master Planning, Equipment, Additional Services for Remodeling and Additions, and Contingency allowances. Corresponding Project Reimbursable Expenses and costs for [the District's] Representative/Project Management services shall also be paid as included in the Project Budget. These fees and costs are intended to be converted to Lump Sum amounts with the initial approval by the [District] and [FCMG] of the Project Scope, Budget, and concept to be advanced for funding. Lump Sum amounts and inclusions shall remain effective for the duration of the Project(s), except in the event of approved changes in the scope of work or alternatives to be bid adding two percent or more to the scope. In such event the Lump Sum fees and costs shall be increased proportionately to reflect the full percentage of changes.

A grid is attached to most copies of the contract in the record. The grid appears to be a schedule of fees for various services.

Section 12.7, another customized provision of the contract, is titled "**RESPONSE TO DISTRICT'S REQUEST FOR PROPOSAL**," and it provides:

> The Architect's Response to the District's Request for Proposal is attached to this Agreement for general

reference purposes including overviews of projects and services. [The District's] approvals following execution of this Agreement and related to the scope of work on the individual projects and corresponding portions of Project Budgets during the various Phases shall incorporate applicable adjustments through the projects [sic] development.

The "Architect's Response to the District's Request for Proposal" referred to in section 12.7 is not attached to any copy of the contract in the record, and there is no such document bearing the title "Architect's Response to the District's Request for Proposal." The parties may have been referring to exhibit 72, which is FCMG's 72-page proposal submitted in response to the District's request for proposals, and possibly in addition, exhibit 19, which is 21 pages of questions and answers exchanged between the parties.

With respect to the background facts of this case, in March 2007, the District issued a request for proposals in connection with the construction and renovation of three schools within its school district. In response to the District's request for proposals, FCMG submitted its proposal dated March 29, 2007. FCMG's proposal is in the record as exhibit 72. In its proposal, FCMG stated that it was to serve as the project's architect, the District's representative, and the project's manager. Specifically, the proposal stated:

FCMG is not a traditional architectural firm. We specialize as independent Owner's Representatives for program and project development and management services. From this independent perspective, we offer your District an opportunity to better control the costs, extended function, and flexibility within the proposed facilities. We have the unique ability to offer guaranteed maximum cost options to assure that the bonds requested and approved by the voters will do the job . . . so that they know before they vote what they will receive . . . and also know that

the quality will be consistent with today's version of the Middle School success.

With respect to rates for the project, FCMG's proposal stated:

FCMG negotiates its fees with its clients in order to provide the best value for the dollar and to respond directly to the nature of the actual projects selected to be funded or further developed. We utilize Lump Sum fees which are incorporated in the projects [sic] budgets. The examples in this Response each include allowances for all fees and expenses.

. . . .

We guarantee that the aggregate fees of our firm together with the Technical Services Consultants will not exceed typically published guidelines for full Basic Services of the entire professionals [sic] team.

. . . .

We encourage you to consider fees on a cost per square foot basis rather than simple percentage. Because our projects are typically 15% or more less in construction costs, technical fees typically follow suit and are less per square foot. Again, we encourage lump sum fees that produce the lowest bottom line at project completion.

After receiving FCMG's proposal, the board of directors of the District sent FCMG a series of written questions concerning the proposal, and FCMG provided its answers in a document dated June 22, 2007. These questions and answers are in the record as exhibit 19. In response to the question "[*d*]*o you have a guaranteed maximum price for the project*," FCMG stated:

Yes. The $20.76 million figure provided the Board in our proposal response is an example of a guaranteed maximum funding equal or greater in square footage and quality to that which the District had proposed in its recent study. Another alternative, one which provided very substantially improved flexibility and square

footage for educational delivery was also provided at a
much lower cost than the recent study by others.

Guaranteed maximum price options are clearly avail-
able to the District in our planning approach. Following
establishment of the exact scope of the work by the Board
as it assesses various options and alternatives, we can be
in a position to set maximum required bond proceeds and
related funding for the group of projects.

. . . .

The budgets offering a nearly $4 million savings which
FCMG presented to [the District] represents a guaranteed
maximum price approach matched to input provided by
the District through its previous study for equivalent or
greater footage and quality for the group of projects.

The District and FCMG entered into the contract, dated
July 18, 2007, of which pertinent sections are quoted above.
A bond to fund the project successfully passed in the fall of
2007, and the project subsequently commenced. During com-
pletion of the project, the board of the District made various
changes to the project. FCMG at various times presented the
District's board with budget grids regarding the project, and
FCMG regularly sent invoices to the District. The invoices
were for work performed by various contractors and FCMG's
fees. The District paid the invoices from March 2008 until
May 2009, when it stopped paying the invoices because it
learned that the project was almost $2 million over budget.
The parties seem to agree that contractors were paid and that
the subject matter of this case is limited to amounts claimed
by FCMG.

On June 29, 2012, FCMG filed its complaint against the
District alleging breach of contract and seeking $2,016,747.52
in damages plus interest, attorney fees, and costs. FCMG filed
an amended complaint on February 11, 2013, in which it added
its claim of unjust enrichment. The District filed its answer
to the amended complaint on March 13, in which it gener-
ally denied FCMG's allegations, raised various affirmative

defenses, and brought counterclaims which it later abandoned. The unjust enrichment claim was abandoned at trial.

The parties filed cross-motions for partial summary judgment on the issue of whether the contract was ambiguous, specifically sections 11.2 and 12.7, quoted above. The District reads the contract as providing for a guaranteed maximum price; but failing that interpretation, the District argued that the contract was ambiguous as to whether the parties intended to fix a guaranteed maximum price for the budget and, in the event increases were permitted, the method as to how to calculate FCMG's fees for increases to the scope of the project. FCMG argued that the contract was not ambiguous, based on the language of the contract. FCMG further argued that the parties' conduct during performance of the contract indicated the true intent of the parties as to the payment of costs and fees.

After a hearing, the district court concluded that neither section 11.2 nor section 12.7 was ambiguous. The district court filed its order on February 11, 2014, in which it granted FCMG's motion for partial summary judgment and denied the District's motion for partial summary judgment. In its order, with regard to section 12.7, the court stated that "[o]ne issue is the effect to be given to [FCMG's response] submitted . . . in response to questions from the [District] regarding the project." The court quoted section 12.7 of the contract and found that "while the words 'for general reference purposes' are possibly ambiguous they do not equate to incorporating [FCMG's response] into the terms of the contract between [FCMG] and [the District] and, therefore, cannot be a basis to determine fees and costs pursuant to the contract." With respect to section 11.2, the district court stated that the District routinely paid invoices submitted by FCMG from March 2008 through May 2009, and that therefore, "there was a course in dealing between the parties which evidences a lack of ambiguity in [section 11.2 of] the contract." Accordingly, the court granted FCMG's motion and denied the District's motion for partial summary judgment.

A jury trial was held February 10 through 14, 2014. When FCMG rested its case, the District moved for directed verdict, which the district court denied. At the close of all the evidence, both parties moved for directed verdict, and the court denied both motions. The case was submitted to the jury, and jury instruction No. 2 provided in pertinent part:

> The Court has determined as a matter of law that the following facts exist and that you must accept them as true:
>
> 1. That the parties entered into a contract related to the construction/remodeling of three facilities for the [District] on August 9, 2007.
>
> 2. That the Court has determined that *the contract in this case is not ambiguous*.

(Emphasis supplied.)

After trial, the jury returned a verdict in favor of FCMG in the amount of $1,972,993, and by order filed February 19, 2014, the district court accepted the jury's verdict and entered judgment for FCMG and against the District in the amount of $1,972,993. On February 27, the District filed its motion for judgment notwithstanding the verdict or, in the alternative, for new trial. The district court denied the District's motion in an order filed April 1.

The District appeals, and FCMG cross-appeals.

ASSIGNMENTS OF ERROR

The District claims 10 assignments of error on appeal, and FCMG claims one assignment of error on cross-appeal; however, we restate only those assignments of error of the District that are necessary for the disposition of this case. See *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015) (stating appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it). The District claims the district court erred when it granted FCMG's motion for partial summary judgment based upon the court's determinations that sections 11.2 and 12.7 of the contract are not ambiguous and that the concept of

a guaranteed maximum price was not incorporated into the contract. The District also claims that the district court erred when it gave jury instruction No. 2, which stated that the contract was not ambiguous.

On cross-appeal, FCMG raises an issue pertaining to interest allegedly owed to it by the District. Given our disposition of the District's appeal, we need not reach the issue raised in the cross-appeal.

## STANDARDS OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015).

[2,3] The meaning of a contract and whether a contract is ambiguous are questions of law. *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id*.

[4] Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014).

## ANALYSIS

The District claims that the district court erred when it determined that both section 11.2 and section 12.7 of the contract were not ambiguous. The District therefore argues that the court erred when it denied the District's motion for partial summary judgment and granted FCMG's motion for partial summary judgment. The District further claims that the court erred when it gave jury instruction No. 2, which states that "the contract in this case is not ambiguous." As a matter of law, we conclude that section 12.7 is not ambiguous but that

section 11.2 is ambiguous. That is, the court did not err when it determined that section 12.7 is not ambiguous, but it erred when it determined that section 11.2 is not ambiguous. As a result, the court erred when it entirely denied the District's motion for partial summary judgment and entirely granted FCMG's motion for partial summary judgment. Furthermore, based upon our determination that section 11.2 is ambiguous, the court erred when it gave jury instruction No. 2, which stated that the contract in this case as a whole is not ambiguous. The errors identified above require that we reverse, and remand for a new trial.

[5-8] The rules of law applicable to this contract case are familiar. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *David Fiala, Ltd. v. Harrison, supra*. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *David Fiala, Ltd. v. Harrison, supra*. The meaning of an ambiguous contract is generally a question of fact. *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005). See, also, *David Fiala, Ltd. v. Harrison, supra*.

*Section 12.7 Is Not Ambiguous.*

The District would prefer that the contract be read as providing a guaranteed maximum price and that it owes nothing further to FCMG. On appeal, the District argues that section 12.7 of the contract is ambiguous, that exhibits 19 and 72 are incorporated into the contract via section 12.7, and that by incorporating exhibits 19 and 72, the contract provides a guaranteed maximum price. The District challenges the district court's ruling to the contrary. We reject this argument.

In describing a guaranteed maximum price contract, the Indiana Court of Appeals has stated that "[a] guaranteed maximum price provides a cap on a party's financial obligations. It is the greatest amount a party is required to pay for the contracted services." *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626, 630 (Ind. App. 1992).

Section 12.7 is a provision customized by the parties, and it provides:

> The Architect's Response to the District's Request for Proposal is attached to this Agreement for general reference purposes including overviews of projects and services. [The District's] approvals following execution of this Agreement and related to the scope of work on the individual projects and corresponding portions of Project Budgets during the various Phases shall incorporate applicable adjustments through the projects [sic] development.

No copy of the contract in the record bears an attachment labeled "Architect's Response to the District's Request for Proposal" referred to in section 12.7, and there is no such document bearing that title in the record. The reference may be to exhibit 72 and/or exhibit 19.

In its February 11, 2014, order, in which the district court granted partial summary judgment in favor of FCMG, the district court rejected the District's argument that section 12.7 was ambiguous. The court stated that "while the words 'for general reference purposes' are possibly ambiguous they do not equate to incorporating [FCMG's responses] into the terms of the contract between [FCMG] and [the District] and, therefore, cannot be a basis to determine fees and costs pursuant to the contract."

We agree with the district court that section 12.7 does not incorporate FCMG's responses and the precontract negotiations into the contract. The expression "for general reference purposes," interesting though it may be, contrasts with a provision, common in contract law, which incorporates another document by reference. Compare *Baker's Supermarkets v.*

*Feldman*, 243 Neb. 684, 688, 502 N.W.2d 428, 432 (1993) (reading original lease and supplemental agreement as integrated where supplemental agreement stated that original lease was "'by this reference deemed incorporated'"). Section 12.7 simply does not incorporate FCMG's responses into the contract.

The District's suggestion that section 12.7 is ambiguous and establishes a guaranteed maximum price is belied by other contract language. The standard language of section 5.2.2 provides: "No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless such fixed limit has been agreed upon in writing and signed by the parties hereto." In *Anderzhon/Architects v. 57 Oxbow II Partnership*, 250 Neb. 768, 553 N.W.2d 157 (1996), we examined a contract that contained the exact standard language of section 5.2.2. In *Anderzhon/Architects*, the parties entered into the contract for the design and construction of a residential apartment complex. The parties had anticipated that the construction costs of the project would be approximately $27,000 to $30,000 per unit, but ultimately, the costs of construction were approximately $39,000 to $43,000 per unit. We noted that there was no written term in the contract which established a construction budget constraint and stated that "[s]ection 5.2.2 of the contract specifies that construction costs are not a condition of the agreement unless such a condition is made by the parties in writing." *Id*. at 775, 553 N.W.2d at 161. We then noted that the record did not contain any evidence that the parties made a writing with respect to a fixed limit of construction costs, and we stated that the parties "intended the contract to be a final expression of the terms it contains with regard to the project budget limitations." *Id*.

Similarly, in the present case, there is no language in the contract that the parties intended there to be a fixed budget with respect to construction costs or otherwise. As determined above, section 12.7 is not ambiguous and does not incorporate any documents that would establish a guaranteed

maximum price. Accordingly, we conclude that section 12.7 is not ambiguous and does not incorporate a guaranteed maximum price into the contract and that therefore, the district court did not err when it so determined.

*Section 11.2 Is Ambiguous.*

The District also argues that section 11.2 of the contract dealing with increased charges is ambiguous and claims that the district court erred when it determined that it was not ambiguous in its order granting partial summary judgment in favor of FCMG. We agree with the District that section 11.2 is ambiguous; the district court's ruling to the contrary was reversible error.

As stated above, section 11.2 is a provision customized by the parties and it provides:

Fees shall be as outlined in the attached Recommended Compensation schedule as applicable to each component facility of the Project and shall be included in various categories of the Project Budget for Basic Services for Site and Construction work, Master Planning, Equipment, Additional Services for Remodeling and Additions, and Contingency allowances. Corresponding Project Reimbursable Expenses and costs for [the District's] Representative/Project Management services shall also be paid as included in the Project Budget. These fees and costs are intended to be converted to Lump Sum amounts with the initial approval by the [District] and [FCMG] of the Project Scope, Budget, and concept to be advanced for funding. Lump Sum amounts and inclusions shall remain effective for the duration of the Project(s), except in the event of approved changes in the scope of work or alternatives to be bid adding two percent or more to the scope. In such event the Lump Sum fees and costs shall be increased proportionately to reflect the full percentage of changes.

In its February 11, 2014, order, the district court determined that section 11.2 is not ambiguous. In reaching its

determination, the court looked to the parties' course of dealing. The court noted that FCMG met with the board of the District in March 2008 to review the billing process and that the board continued to pay invoices submitted by FCMG through May 2009. The court then pointed to the parties' course of dealing "[a]s evidence of the manner in which fees on increases in the scope of the project were calculated . . . ."

As an example demonstrating the basis for its ruling, the court noted invoice No. 29-1006, dated November 30, 2008, which stated that the original project area was 69,000 square feet and that 5,619 square feet had been added to the original area. The court stated that the additional square footage was billed at $9.22 per square foot, which was calculated based on the square footage cost of the original project area. The court observed that invoice No. 29-1006 was paid in full by the District, and that "[t]hus, there was a course in dealing between the parties which evidences a lack of ambiguity in the contract." The district court erred in employing the foregoing approach to reaching its determination regarding ambiguity and, as a matter of law, erred in its result.

[9,10] We have previously stated that extrinsic evidence is not permitted to explain the terms of a contract that is not ambiguous. *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005); *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003). When a contract is unambiguous, the intentions of the parties must be determined from the contract itself. *Spanish Oaks v. Hy-Vee, supra*. Accordingly, if section 11.2 of the contract was not ambiguous, as the district court determined, then it was not appropriate for the district court to look to extrinsic evidence, such as the parties' course of dealings, to so conclude.

The District contends that the language of section 11.2 is ambiguous because it is not clear how the "scope of work" is to be determined, which in turn serves as a basis for increased fees and costs which, in the language of the contract, "shall be increased proportionately."

"[S]cope of work" is not a defined term in the contract. It is not clear what is encompassed by "scope of work." There is some suggestion that square footage may be one way that scope of work may be determined, but there are arguably other ways to determine the scope of work under the contract. For example, FCMG asserts that the contract provides that "not only square footage increases, but increases relating to non-square footage items such as equipment and Owner's Representative fees" are included in scope of work. Brief for appellee at 8. We conclude as a matter of law that section 11.2, and in particular "scope of work," is ambiguous and that the district court erred when it determined that section 11.2 is not ambiguous and entered summary judgment orders accordingly.

*Jury Instruction No. 2 Was*
*Prejudicial Error.*

The District claims that the district court erred when it gave jury instruction No. 2 because, inter alia, the contract was ambiguous and instruction No. 2 stated to the contrary. We understand, in addition, that the District believes jury instruction No. 2 was erroneous because it is confusing. In this regard, we note that during its deliberations, the jury sent out a note asking the court: "If we were to decide for [FCMG], are we allowed to reduce the amount of the award? And, if so, do we need to show how we calculated the reduced amount?" We determine that jury instruction No. 2 constituted prejudicial error.

[11-13] We have stated that a court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). Rather, when a court has determined that ambiguity exits in a document, an interpretive meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder. *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015). In this regard, we have stated in a jury case that when

the terms of the contract are in dispute and the real intentions of the parties cannot be determined from the words used, the jury, not the court, should determine the issue from all the facts and circumstances. *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005). A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous. *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010).

Because section 11.2 is ambiguous, parol evidence should have been permitted at trial and the court should have given the issue of the meaning of the ambiguous contract to the jury. However, in this case, the district court instructed the jury as follows:

> The Court has determined as a matter of law that the following facts exist and that you must accept them as true:
>
> 1. That the parties entered into a contract related to the construction/remodeling of three facilities for the [District] on August 9, 2007.
>
> 2. That the Court has determined that *the contract in this case is not ambiguous*.

(Emphasis supplied.) We determine it was error for the court to instruct the jury that the contract in this case is not ambiguous. Rather, the court should have instructed the jury that section 11.2 of the contract was ambiguous and that the jury was to determine its meaning.

[14] Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014). In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id*.

We conclude that the district court's error in the giving of jury instruction No. 2 was prejudicial and constitutes

reversible error. Had the court not erroneously determined that section 11.2 was unambiguous and granted partial summary judgment in favor of FCMG based upon this determination, the parties could have presented evidence at trial with respect to the meaning of section 11.2, specifically the meaning of "scope of work." The parties could have framed their arguments differently at trial to address the meaning of section 11.2 and how they believed the jury should interpret it and award damages, if any. Therefore, we determine that jury instruction No. 2, which stated that "the contract in this case is not ambiguous," is prejudicial error, and we reverse, and remand for a new trial.

Because we conclude that a new trial is required, we do not reach the District's remaining assignments of error or FCMG's assignment of error on cross-appeal. See *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015) (stating appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## CONCLUSION

We determine that the district court did not err when it determined that section 12.7 of the contract was not ambiguous, but did err when it determined that section 11.2 of the contract was not ambiguous. Accordingly, the district court prejudicially erred when it gave jury instruction No. 2, which stated that the contract in this case is not ambiguous. For the reasons explained above, we reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

STEPHAN, J., not participating.